## SECOND DIVISION
## BARNES, P. J.,
## ADAMS and MCFADDEN, JJ.

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**June 6, 2012**

# In the Court of Appeals of Georgia

A12A0575. TUCKER v. THE STATE.

ADAMS, Judge.

The trial court denied a motion for new trial filed by Deandre Pierre Tucker after a jury convicted him on one count of burglary and one count of criminal interference with government property. Tucker appeals the denial of his motion, asserting as his sole enumeration of error that the trial court erred in failing to suppress evidence of a pre-trial identification of him as one of the two men involved in the burglary. Finding no error, we affirm.

Viewed in the light most favorable to the verdict, the evidence at trial showed that when Steven O'Connell and his wife left their home in Mableton on the morning of February 16, 2009, the back door of their home and the windows surrounding it

were closed and locked, including a steel door that separates the back door and the enclosed porch area from the main house.

Later in the day, while the O'Connells were still away, their neighbor, Andrew Beringause, observed two young men walking up the O'Connell's driveway. One of the men had dreadlocks and the other man was taller, with short hair. The man with the dreadlocks knocked on the front door, while the taller man went to the back of the house. No one answered the front door, and Beringause saw the taller man open the side door that goes to the back of the house. He then returned to the front and both men walked back to the side door, opened it and went in. Beringause dialed 911, while he went outside to watch the men. He said that they stayed in the O'Connell house, at the most, ten minutes. Beringause remained on the phone as he watched the men exit the house, walk up the driveway and then up the street. Beringause followed approximately 35 to 40 yards behind men. At one point the men left the street and cut through some yards toward a street called Woodward Circle. Beringause stated that the men were wearing jackets with hoods. One of the jackets was white with either blue or black on it. The men had their hoods up when Beringause first saw them, but they took the hoods off as they walked up the O'Connells' driveway. The police arrived approximately fifteen minutes after Beringause called. Upon investigation,

2

they discovered that a window by the O'Connells' back door had been forced open, allowing access to the doorhandle to open the door, which led to the enclosed porch. O'Connell later determined that items had been moved around on the porch, but nothing had been taken from the house.

Approximately ten minutes after police arrived, the officers drove Beringause to Woodward Circle and asked him if he could identify two men who were standing there. One of the men had dreadlocks and the other was taller, with shorter hair; neither was wearing a jacket at the time. Beringause, who stayed seated in the patrol car, identified them as the two men he had seen go into the O'Connells' house. At trial, Beringause identified Tucker as the man he saw that day with dreadlocks.

Shortly prior to this showup, the police had stopped Tucker driving a silver Impala on Woodward Circle after a neighbor informed the officers that she had seen the car driving slowly in the neighborhood earlier that day. The police initiated the stop because Tucker and his passenger fit the description provided by Beringause. At the time he was stopped, Tucker was wearing binoculars around his neck and black gloves. And at trial, Beringause identified a jacket later found in the Impala as "about the same jacket" one of the men had been wearing.

After Tucker was arrested and placed into the back of a patrol car, he began rocking back and forth, striking his head on the plexiglass divider between the front and back seats. Before the officers could stop him, he rocked forward again and put his head through the plexiglass.[1]

Tucker asserts that the show-up procedure followed by the police with Beringause was impermissibly suggestive, and that the trial court erred in denying his motion to suppress the indentification.

> Although a one-on-one showup is inherently suggestive, identification testimony produced from the showup is not necessarily inadmissible. We must apply a two-part test to determine whether the showup was impermissibly suggestive, and, if the showup was impermissibly suggestive, we then consider the totality of the circumstances to determine whether a "very substantial likelihood" existed of irreparable misidentification. With regard to part one of the test, this [c]ourt has previously held that on-the-scene showup identifications, like the one in the present case, are often necessary "due to the practicabilities inherent in such situations." Thus, as long as this type of showup was reasonably and fairly conducted at or near the time of the offense, it is not impermissibly suggestive and we need not reach the second part of the test.

---

[1] The State also introduced evidence of a similar transaction in which Tucker pled guilty to a weekday burglary of a home whose owners were at work. Tucker gained entry to that home through a window in the back of the house.

(Citations omitted.) *Wallace v. State,* 295 Ga. App. 452, 454 (1) (671 SE2d 911) (2009). "Conversely, we may immediately proceed to the second question and, if the answer thereto is negative, we may entirely pretermit the first question." *Butler v. State*, 290 Ga. 412, 415 (3) (721 SE2d 876) (2012).

Thus, even if were to assume without deciding "that the circumstances surrounding [Tucker's] identification rendered the showup impermissibly suggestive, the evidence is inadmissible only if under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification." (Citations omitted.) Id. We find no such substantial likelihood. The crime occurred in the daylight and Beringause observed the men from the time they first approached the house and followed them up the street until they turned. Although the men had their hoods up when Beringause first saw them, they removed their hoods as they walked up the driveway to the back of the house. He then followed them up the street for some time at a distance. The description provided by Beringause was fairly detailed with regard to the hairstyles and relative height of the two men, which matched Tucker and his passenger. And the showup occurred within one-half hour of his first placing a call to police. Beringause identified the two men readily even though they were not wearing the hooded jackets at the time. And although some discrepancies may have

5

existed between Beringause's description of their clothes at the time of the crime, the clothes Tucker was wearing at the time of his arrest, and the jacket later found in Tucker's car, such issues are for the jury. Id. "As identity is a question for the trier of fact, the credibility of the witness making such identification is not to be decided by this Court where a witness identifies a defendant. Instead, the witness's credibility as well as the weight given his testimony on the perpetrator's identity were issues for the jury." (Citations omitted.) *Scruggs v. State,* 309 Ga. App. 569, 576 (4) (711 SE2d 86) (2011). Under these circumstances, we cannot say that the trial court was clearly erroneous in finding Beringause's identification sufficiently reliable to be admitted at trial. *Butler v. State*, 290 Ga. at 415-416 (3).

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*