### S13A0757. SCANDRETT v. THE STATE.
(748 SE2d 861)

MELTON, Justice.

Following a jury trial, Darian A. Scandrett appeals his conviction for malice murder, felony murder, aggravated assault, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a crime, contending that the trial court admitted improper evidence and that he received ineffective assistance of counsel.[1] For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, on December 16, 1997, Tyrone Chambers was with Deavis Reese at Thomasville Heights Apartments. At that time, Scandrett and a man known as "Shortie Pimp" approached. Scandrett and Shortie Pimp asked about purchasing cocaine, and Chambers answered that they could find some for sale across the street. Shortie Pimp then left, but Scandrett stayed and continued to walk back and forth for approximately 10-15 minutes, asking Chambers and Reese if they had seen "Slim." During this time, Reese observed Scandrett's face and noticed that he had a white film around his mouth. Scandrett then approached Chambers and Reese, looked both ways, and said, "Check this out." Scandrett pulled out a Glock .9mm handgun and began firing. Reese was not injured, but Chambers died as a result of multiple gunshot wounds.

---

[1] On June 17, 2003, Scandrett was indicted for malice murder, two counts of felony murder, aggravated assault, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a crime. A jury trial commencing on April 21, 2006 ended in a mistrial. At a subsequent trial on May 23, 2006, Scandrett was found guilty on all counts, and he was sentenced to life imprisonment for malice murder, five consecutive years for possession of a firearm by a convicted felon, and five additional consecutive years for possession of a firearm during the commission of a crime. The convictions for felony murder were vacated by operation of law. Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). All remaining charges were merged for purposes of sentencing. Scandrett filed a motion for new trial on May 26, 2006, and, after retaining new counsel, filed an amended motion on July 14, 2010. The trial court denied the motion on February 8, 2012. Scandrett filed a timely notice of appeal, and his case was thereafter docketed to the April 2013 term of this Court and submitted for decision on the briefs.

Approximately one year after Chambers's murder, which had gone unsolved, Officer Eric Minter with the Atlanta Police Department was working a roadblock. With cars traveling behind him, Scandrett approached the roadblock, but he suddenly turned down a side road without using his signal. Officer Minter pursued and stopped Scandrett, and he located a fully loaded Glock .9mm handgun in the driver's side floorboard. Officer Minter arrested Scandrett for carrying a concealed weapon, and, some time later, the GBI tested the Glock and confirmed that shell casings recovered at the crime scene were fired from the Glock found in Scandrett's possession.

At trial, Reese identified Scandrett as the shooter. In addition, Mekael Daniels, a friend of Scandrett, testified that Scandrett told him that he shot Chambers. Daniels also identified the murder weapon as the gun Scandrett had previously shown him and claimed to be the weapon he used to commit the murder. Daniels further testified that Scandrett told him that he was wearing a skull cap at the time of the murder, matching the description of witnesses. Jvonne Bailey observed Chambers's murder through her window. She testified that the shooter had a medium build and used a Glock.

This evidence was sufficient to enable the jury to find Scandrett guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Scandrett maintains that the trial court erred by failing to suppress Reese's identification of him during trial, arguing that the in-court identification had been tainted by an improperly suggestive pre-trial identification that already had been suppressed. "On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous." (Citation and punctuation omitted.) *Stringer v. State*, 285 Ga. 842, 843 (2) (684 SE2d 590) (2009). "[E]ven if a pretrial identification is tainted, an in-court identification is not constitutionally inadmissible if it does not depend upon the prior identification but has an independent origin." (Citation and punctuation omitted.) *Wilson v. State*, 275 Ga. 53, 59 (3) (562 SE2d 164) (2002).

The record shows that, approximately six years after the shooting, Reese was shown a photograph of Scandrett for an out-of-court identification. The following day Reese was present for Scandrett's bond hearing and saw him shackled and in jail clothes. At an initial trial, which ended in a mistrial, the improper procedure regarding the out-of-court identification came to light for the first time. Prior to Scandrett's subsequent trial, Reese's out-of-court identification was

suppressed as impermissibly suggestive, but he was allowed to make an in-court identification of Scandrett.

Before the admission of this in-court identification, a hearing was held at which Reese stated that his identification of Scandrett was not dependent on the out-of-court show-up. To the contrary, Reese testified that, at the time of the murder, he was in close contact with Scandrett for as long as ten minutes, that he got a good look at Scandrett, and that he would never forget the face of the man who shot his friend. Based on this testimony, the trial court found that Reese's in-court identification of Scandrett had an independent origin from the out-of-court identification. The trial court did not abuse its discretion in making this finding or in denying Scandrett's motion to suppress. *Wilson*, supra.

3. Scandrett contends that the trial court erred by denying his motion to suppress the Glock handgun found in his car, arguing that his stop was illegal because, contrary to Officer Minter's testimony, the facts did not support a stop for an illegal turn. See OCGA § 40-6-123. This, however, is a matter of credibility. Officer Minter testified that he knew he could not stop Scandrett for failing to employ a turn signal unless there were other cars behind him. Officer Minter further testified that he specifically remembered other cars following closely behind Scandrett when he abruptly turned without a signal. The trial court neither acted clearly erroneously by believing Officer Minter nor erred by denying Scandrett's motion to suppress. *Stringer*, supra.

4. Scandrett argues that trial counsel rendered ineffective assistance by failing to introduce into evidence Scandrett's driver's license photo which showed that he had short hair, not braids, approximately three months before the murder. Scandrett contends that this picture would have refuted Reese's testimony that the shooter had braids underneath the skull cap that he was wearing.

> In order to succeed on his claim of ineffective assistance, [Scandrett] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, " '[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we

independently apply the legal principles to the facts.' [Cit.]"
*Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

*Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).
   As an initial matter, there is no evidence that trial counsel was aware of Scandrett's driver's license at the time of trial. In any event, the record shows that trial counsel did diligently get testimony to the jury that Scandrett's hair was short at the time of the shooting and that he did not have braids. Therefore, as there was already some evidence regarding a discrepancy in Scandrett's hair length before the jury, it cannot be said that there is a reasonable probability that the trial result would have been different if Scandrett's driver's license had been available to trial counsel and entered into evidence. *Wright*, supra.
   *Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 23, 2013.

*Kenneth D. Kondritzer*, for appellant.
   *Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Peggy R. Katz, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General*, for appellee.