**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 7, 2013**

# In the Court of Appeals of Georgia

A13A1221. SINGLETON v. THE STATE.

PHIPPS, Chief Judge.

A jury found Alajuwon Singleton and his co-defendant, David Raesham Milam, guilty of armed robbery and possession of a firearm during the commission of a crime. Convicted of these crimes, Singleton contends in this appeal that the trial court erred in denying his motion to suppress evidence of the armed robbery victim's pre-trial and trial identifications of him as one of the two perpetrators. Singleton also contends that the trial court erred by impaneling and swearing a jury to try his case, positing that the record does not show that he was ever arraigned. Finding no reversible error, we affirm.

The trial evidence showed that, during the renovation of residences within a housing project, a construction superintendent was robbed at gunpoint in his

company's office trailer at the construction site. The superintendent provided the following account. At about 9:30 a.m. on August 21, 2008, two men came into the trailer, where the superintendent was working alone. The superintendent was facing the men as they approached him. One of the men put a handgun to the superintendent's head. The men forced the superintendent to lean over the desk as they removed the contents of his pockets, including his billfold and cell phone. As they turned to leave, they dropped his billfold, but took with them cash and a credit card from his billfold, as well as his cell phone. The two robbers fled on foot, and the superintendent observed the route they took. The superintendent summoned the police, who arrived at the scene by 9:40 a.m.

Upon obtaining from the superintendent descriptions of the assailants and the direction in which they had fled, the police immediately issued a BOLO for the perpetrators, and law enforcement officers canvassed the area indicated by the superintendent. Reports from community bystanders led police to a certain residence within the housing project, where they found Singleton and Milam. Singleton was in an upstairs bedroom, sitting on a bed and holding a video game controller; the television was on; and on the floor, about three feet from him, was a loaded gun magazine. A subsequent search of that bedroom yielded the superintendent's cell

phone, which had been disassembled, and the superintendent's credit card, which was found stashed amongst clothing in the bedroom closet. Milam was discovered in the closet of another upstairs bedroom. According to the officer who found Milam, "He was just standing there."

Police took Singleton and Milam into custody, then transported them in separate cars to the office trailer to determine whether the superintendent recognized either of them. The superintendent immediately identified Singleton and Milam as the two individuals who had taken his belongings from him at gunpoint. Again, in court, the superintendent identified Singleton and Milam as the armed robbers.

1. Singleton challenges the admissibility of the superintendent's pretrial and trial identifications of him. He claims that the trial court erred in denying his motion to suppress that evidence, maintaining that the showup procedure employed by the police was impermissibly suggestive. Singleton points out that he was displayed to the superintendent stepping out of a police car and while he was in handcuffs. Singleton points out further that when he was apprehended by police, he was not wearing clothing that matched the superintendent's description of the clothing worn by the perpetrators.

3

"Although a one-on-one showup is inherently suggestive, identification testimony produced from the showup is not necessarily inadmissible."[1] "We must apply a two-part test to determine whether the showup was impermissibly suggestive, and, if the showup was impermissibly suggestive, we then consider the totality of the circumstances to determine whether a very substantial likelihood existed of irreparable misidentification."[2] If the answer to the first question is negative, we need not consider the second question; conversely, we may immediately proceed to the second question and, if the answer thereto is negative, we may entirely pretermit the first question.[3] Thus, even if we were to assume without deciding that "the circumstances surrounding [Singleton's] identification rendered the showup impermissibly suggestive, the evidence is inadmissible only if under the totality of

---

[1] *Butler v. State*, 290 Ga. 412, 414 (3) (721 SE2d 876) (2012) (citation and punctuation omitted).

[2] *Tucker v. State*, 316 Ga. App. 119, 121 (728 SE2d 764) (2012) (citation and punctuation omitted). See generally *McBride v. State*, 291 Ga. 593, 594-595 (2) (732 SE2d 757) (2012) (enumerating factors to be considered in answering the question whether there was a very substantial likelihood of irreparable misidentification), citing *Neil v. Biggers*, 409 U. S. 188, 199 (III) (93 SCt 375, 34 LE2d 401) (1972).

[3] *Butler*, supra at 415 (3); *Tucker*, supra.

the circumstances, there was a substantial likelihood of irreparable misidentification."[4]

At the pretrial hearing on Singleton's motion to suppress evidence of his identification by the superintendent, a law enforcement officer testified that the showup was conducted between 11:00 and 11:25 a.m., which was immediately after Singleton and Milam were taken into custody. When Singleton stepped out of the patrol car, the superintendent identified him as one of the two perpetrators. When Milam stepped out of a different patrol car, the superintendent identified him as the other perpetrator, distinguishing further that Milam had been the one holding the gun.

The superintendent testified at the pretrial hearing that the criminal episode had lasted about one minute, during which time, he had noted that both assailants were wearing white tee-shirts, that one assailant was wearing red pants, and that the other was wearing black pants. The assailants had worn nothing covering their faces, and the superintendent discerned them as black males, about 21 years old. Additionally, he noted that they were approximately six feet tall and with slim builds. And he continued to observe them after they exited the office trailer. About an hour and a half

---

[4] *Butler*, supra (citations omitted); see *Tucker*, supra.

after the armed robbery, the superintendent recalled, he identified Singleton and Milam as his assailants.

Prior to so identifying Singleton and Milam, the superintendent recounted further at the hearing, police had shown him other suspects. About 30 to 45 minutes after the armed robbery, police brought two individuals to the superintendent, but he determined that neither had perpetrated the crimes. Thereafter, police took the superintendent to a nearby location and asked him whether a specified individual there had been involved; that third individual, the superintendent determined, had not been involved. With respect to those three individuals, the superintendent recalled at the pretrial hearing, "They all met the clothes description and the general description of – that I had given the first officer." But after studying the faces of those individuals, the superintendent testified, he concluded, "[I]t wasn't the people."

The evidence thus showed that, when the perpetrators entered the office trailer that morning, their faces were not covered, and the superintendent noted their facial features, discerning each intruder's gender, race, and age. The two intruders were clad in tee-shirts and pants and stood close enough to the superintendent to put a gun to his head and remove property from his pockets; he noted each man's height and build. When the robbers exited the office trailer, the superintendent continued to observe

6

them as they ran away. The superintendent rejected initial individuals presented to him for possible identification, based on their facial features, despite clothing similarities. And the superintendent's identification of Singleton (and Milam) took place within two hours of the armed robbery. Although Singleton points to discrepancies between the robbers' clothing and his clothing at the time he was apprehended by police, "the existence of some inconsistencies did not render [the superintendent's] testimony inadmissible, but rather [presented] a matter for the jury."[5]

> As identity is a question for the trier of fact, the credibility of the witness making such identification is not to be decided by this [c]ourt where a witness identifies a defendant. Instead, the witness's credibility as well as the weight given his testimony on the perpetrator's identity were issues for the jury.[6]

Under the totality of circumstances presented here, the trial court was authorized to find that the showup procedure employed by police here did not give rise to a

---

[5] *Butler*, supra; see *Tucker*, supra at 122 (determining that clothing discrepancies were issues for the jury).

[6] *Butler*, supra (citation and punctuation omitted); *Tucker*, supra (citation and punctuation omitted).

substantial likelihood of irreparable misidentification.[7] The trial court, therefore, did not err in concluding that the superintendent's identifications were sufficiently reliable to be admitted at trial.[8]

---

[7] See *Butler*, supra at 414-416 (3) (trial court could conclude that a substantial likelihood of irreparable misidentification did not arise from a one-on-one showup, such that victim's testimony about his pretrial identification of defendant at the showup was admissible at trial, where victim had opportunity to view the attacker's face and focused his attention thereon, less than one hour elapsed between the crime and the showup, and victim's description of the attacker was fairly complete); *Mercer v. State*, 268 Ga. 856, 304 (3) (493 SE2d 921) (1998) (concluding that one-on-one showup that was conducted immediately after defendant was apprehended did not give rise to substantial likelihood that eyewitness to assault mistakenly identified defendant as one of the two assailants, where witness had observed assailants for more than 30 minutes, less than 24 hours prior to showup, and positively identified defendant); *Jones v. State*, 258 Ga. 25, 27 (3) (365 SE2d 263) (1988) (rejecting claim that in-court identification was impermissibly tainted by pretrial showup identification, where witness testified that he observed the defendant at the victim's home for "three or four seconds" in a well-lighted area and was able to give an accurate and detailed description of the appellant to officers who arrested appellant based on this description and where witness testified that his in-court identification of the appellant was based solely on his observations at the scene of the crime); *Tucker*, supra at 121-122 (2012) (rejecting claim that showup created risk of substantial likelihood of irreparable misidentification, where crime occurred in daylight, eyewitness observed both suspects approach and ultimately enter victims' home after investigating methods of entry, eyewitness followed suspects after they exited home, description eyewitness provided to police was detailed and matched defendant and defendant's passenger who were stopped by police soon afterwards, and showup occurred within one-half hour after crime).

[8] *Butler*, supra at 415-416 (3) (citation omitted); see *Tucker*, supra.

Consequently, Singleton's evidentiary challenge affords him no relief from his judgment of conviction.

2. Singleton contends that the trial court erred "by impaneling and swearing a jury to try [him] prior to arraignment." Singleton points out that the record contains no plea of not guilty and no waiver of arraignment, and thus posits, "Therefore the issue of [his] guilt was never joined and it was reversible error to place him in jeopardy and try him before a jury."

It has long been held, however, that a defendant who has been indicted is presumed to waive formal arraignment "by his silent acquiescence, if, before the case is submitted to a jury on its merits, he does not bring to the attention of the court that he has not been formally called upon to enter a plea to the indictment."[9] Singleton makes no assertion that he objected to the (alleged) lack of an arraignment either before the case was submitted to the jury or before the guilty verdicts were returned;

---

[9] *Hudson v. State*, 117 Ga. 704 (1) (45 SE 66) (1903) (reasoning that a party who goes into court "practically on a plea of not guilty should not, after verdict, be permitted to assign as a reason for setting aside the verdict that he was not asked to say whether he was guilty of not guilty before the trial") (citation omitted); see *Bunn v. State*, 150 Ga. App. 294, 295 (3) (257 SE2d 364) (1979) ("The law of this State is well settled that a defendant may waive arraignment and plea by failure to call the attention of the court to this defect in the proceedings at the proper time, and when it does not appear that he made any mention of the fact until after verdict he is conclusively presumed to have done so.").

and our review of the record reveals no such objection. Furthermore, Singleton makes no claim that he was unaware of the charges against him.[10] Given the foregoing, this contention provides Singleton no relief from his judgment of conviction.[11]

*Judgment affirmed. Ellington, P. J., and Branch, J., concur.*

---

[10] Accord *Gormillon v. State*, 236 Ga. App. 14, 18 (3) (d) (512 SE2d 640) (1999) ("Waiver of arraignment provides no basis for a claim of ineffective assistance of counsel when [defendant] does not claim he was unaware of the charges against him, which is the purpose of arraignment.") (citation omitted).

[11] See *Hudson*, supra; *Gormillon*, supra; *Bunn*, supra.