**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 28, 2014**

# In the Court of Appeals of Georgia

A13A1680. SORRELLS v. THE STATE.

PHIPPS, Chief Judge.

As part of an ongoing narcotics investigation, police detectives working undercover with the aid of a confidential informant purchased cocaine from a man whom the detectives later identified as Eurieso Sorrells. Thereafter convicted for the sale of cocaine, Sorrells was given a 40-year recidivist sentence, and his motion for new trial was denied. In this appeal, Sorrells contends that the trial court erred by admitting evidence of one of the detectives' pretrial and in-court identifications of him and by rejecting his claim of ineffective assistance of trial counsel. Sorrells has demonstrated no merit in his challenge to the identification evidence, and thus no basis to disturb his judgment of conviction. For reasons that follow, we vacate the

denial of Sorrells's motion for new trial and remand the case for proceedings not inconsistent with this opinion.

Evidence at the jury trial showed the following. On November 4, 2009, two police detectives and a confidential informant set out in the confidential informant's vehicle to make undercover street-side buys of narcotics. Their only such buy on that date – a twenty-dollar purchase of cocaine – occurred within a city's residential community at about 9:00 p.m. The state called the detectives, but not the confidential informant, to testify about what transpired at the scene.

Detective Chris Stapleton, who had been seated in the front passenger seat of the vehicle, recounted:

> As we approached the [man] he approached our car from my side. He reached in the car to retrieve the money. The confidential informant was actually driving. I had already handed him the money. And the confidential informant passed the money to the [man]. The [man] passed a small plastic wrap with – a cornerbag, the corner of a plastic bag of powder cocaine to him. I asked the [man], you know, for a phone number or something, how could I get in touch with him if I wanted to buy some more. He just said his name was Black and he's always in that

2

area. We drove off and I passed the, at that time, suspected[1] cocaine [to the detective seated in the back seat].

The man was not arrested that night, for reasons relating to the safety of the detectives and the confidential informant. Regarding the latter, the detectives sought to preserve the confidentiality of the informant's identity so as to protect him against possible retaliation. Additionally, the police sought to shield the informant's identity so as not to diminish the informant's usefulness in ongoing and future investigations.[2]

Stapleton testified that he had gotten "a very good, clear view" of the man, recounting that the area was illuminated by motor vehicle headlights, streetlights, and porch lights and that the interior of the vehicle was illuminated further by dashboard lights. Stapleton testified that, by that point in the evening, his eyes had adjusted to the lighting conditions. Stapleton further described that "the transaction took place right in front of me," recalling that "the man [had] actually reached into the car to [the] point his elbow passed the windowsill," and estimating that the man's face was

---

[1] The state introduced evidence that the substance passed from the man to the confidential informant in exchange for the money was later determined to be cocaine.

[2] See generally *Thornton v. State*, 238 Ga. 160, 163 (2) (231 SE2d 729) (1977) (noting public policy to protect and encourage the flow of information to law enforcement officials).

3

then about a foot and a half from his own. Stapleton had spoken with the man and made eye contact with him. As the detective reiterated, "[W]hat we're trying to do was identify people who were doing this type thing. So I had to see who I was looking at."

Stapleton testified that, during the transaction, he recognized the man as a member of the community, but did not at the time know the man's name. Stapleton testified further that, after the detectives ended their street investigation and returned to the police station around midnight to 1:00 a.m., "[the backup detective] pulled up a picture of Mr. Sorrells and I looked at it and said, 'Yes, that's the individual I just purchased cocaine from.'"

The backup detective, who had been seated in the back of the confidential informant's vehicle, gave a similar account of that night. He testified that his eyes had adjusted to the lighting conditions and that, while he had recognized the man's face, he could not then recall the man's name. Prior to that evening, the backup detective had seen that man in the area approximately 100 times.[3] The backup detective

---

[3] Hence, that detective took measures for the man not to recognize him as a police officer: "I had my head down with my eyes – or my hands over my face . . . to where I could still see what was going on . . . you know, if something happened I could protect my undercover – the other undercover officer and the C. I."

4

recounted that he had been involved in approximately 300 drug investigations, during 200 of which he had acted in an undercover capacity. And during one eleven-month period, he had lived undercover in the area – buying drugs so as to gather intelligence concerning street-level drug dealers. The backup detective elaborated, "When I was undercover, I knew a lot of the street names of suspects."

The backup detective testified that when Stapleton asked the man for contact information and the man responded that he was known in the area as "Black," "it clicked on me who his name was." The backup detective added, "I showed Detective Stapleton a picture of the suspect because, like I said, once he told me the street name I knew – I knew who it was." On cross-examination, defense counsel asked the backup detective, "[W]hen you say you immediately identified Black as Eurieso Sorrells, is it fair to say then that his one and only street name is Black?" The backup detective answered, "Yes, sir. That's the only thing I've known him by is Black."

A warrant for Sorrells's arrest was executed on January 28, 2010. And at Sorrells's trial held in June 2010, both detectives pointed to Sorrells as the man who had sold the cocaine.

Sorrells did not testify, but called two witnesses to support his defense of misidentification. Sorrells's first witness was his mother, who testified that Sorrells

5

was inside her house from 5:30 p.m. on the night in question until about 10:00 the following morning. When asked about Sorrells's use of any aliases, she answered that Sorrells's nickname was "Boot," which she had given him at birth, and that she had never known Sorrells to use the name "Black."

Sorrells's second witness was an individual who had worked in the booking area at the local jail. That witness described how an arrested suspect's information was gathered and entered into the jail's computer system. Through that witness, Sorrells's attorney introduced numerous documents authenticated as the computer-generated arrest and booking reports for Sorrells. That witness explained that the documents provided spaces for an alias and testified that "Boot" was the only alias recorded on any of the documents.

1. Sorrells contends that the trial court erred by denying his motion in limine to exclude Stapleton's pretrial and trial identifications of him. He argues that the identification procedure – wherein the backup detective showed Stapleton a single photograph of him – was overly suggestive and created a substantial likelihood of misidentification.

"Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification

procedure was so impermissibly suggestive *as to give rise to a very substantial likelihood of irreparable misidentification.*[4] Accordingly, even if a pretrial identification procedure is impermissibly suggestive,[5] "the evidence is inadmissible only if under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification."[6] Factors to be considered include: "(1) a witness'[s] opportunity to view the accused at the time of the crime; (2) the witness'[s] degree of attention; (3) the accuracy of the witness'[s] prior description of accused; (4) the witness'[s] level of certainty at the confrontation; and (5) the length of time between

---

[4] *Mathis v. State*, 293 Ga. 837, 841 (5) (750 SE2d 308) (2013) (citation omitted; emphasis supplied).

[5] See generally *Johnson v. State*, 294 Ga. 86, 90 (4) (750 SE2d 347) (2013) ("An unduly suggestive procedure is one which leads the witness to the virtually inevitable identification of the defendant as the perpetrator, and is equivalent to the authorities telling the witness, 'This is our suspect.'") (citation omitted); *Anderson v. State,* 265 Ga. App. 428, 431 (3) (A) (594 SE2d 669) (2004) (determining that showing suspects singly to a witness for identification purposes is inherently suggestive).

[6] *Butler v. State*, 290 Ga. 412, 415 (3) (721 SE2d 876) (2012) (citations omitted); see *Tucker v. State*, 316 Ga. App. 119, 121 (728 SE2d 764) (2012); see also *Jones v. State*, 273 Ga. 213, 216 (2) (539 SE2d 143) (2000) (explaining that where there is no "substantial likelihood of irreparable misidentification. . ., then both the pre-trial and in-court identifications are admissible").

the crime and the confrontation."[7] Moreover, "[e]ven if a pretrial identification is tainted, an in-court identification is not constitutionally inadmissible if it does not depend upon the prior identification but has an independent origin."[8] On review of a trial court's ruling on a motion to exclude an identification, "evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous."[9]

Sorrells points out that the drug transaction occurred at night and that the street-side encounter was brief. He asserts that, because the detectives had attempted to make other drug buys that night, Stapleton "could have confused the identification," pointing out that Stapleton admittedly did not take any notes or otherwise record any physical description of the seller of the cocaine. Sorrells points

---

[7] *Mathis*, supra at 842 (5) (citation omitted); see *McBride v. State*, 291 Ga. 593, 594-595 (2) (732 SE2d 757) (2012) (enumerating factors to be considered in answering the question whether there was a very substantial likelihood of irreparable misidentification), citing *Neil v. Biggers*, 409 U. S. 188, 199 (III) (93 SCt 375, 34 LE2d 401) (1972).

[8] *Scandrett v. State*, 293 Ga. 602, 603 (2) (748 SE2d 861) (2013) (citation and punctuation omitted).

[9] Id. (citation and punctuation omitted); see *Jones*, supra (instructing that, "in evaluating factors, the trial court is the trier of fact and must judge the credibility of the witnesses and the weight and conflict in the evidence").

8

out further that, prior to being shown the single photograph, Stapleton had given the backup detective no description of the seller.

Notwithstanding, we find no abuse of discretion in permitting evidence of the contested identifications. At the hearing on Sorrells's motion in limine, the state called Stapleton to testify. He recalled that the twenty-dollar purchase of cocaine had been their only street-side drug transaction on that date. He described that, while the transaction had occurred at night, the area was illuminated by street lights and vehicle headlights and that he had been riding in the car for sufficient time such that his eyes had adjusted to the lighting conditions. The exchange had taken "[t]hirty seconds to a minute," during which time the seller had leaned down and toward his opened window, then reached across him which had brought the seller's face to within "[a] matter of inches" of his own. Stapleton testified that "it was not the kind of situation where you would avert your face," explaining that the whole purpose for the encounter was "to identify local street-level dealers, to go out and attempt to purchase . . . drugs from street-level dealers." Further, Stapleton had verbally engaged the seller. Prior to that night, the detective had completed several classes in which he was taught various techniques of identifying, recognizing, and distinguishing features of individuals. The detective testified that he had recognized the man from that

9

community, although he had not known the man's name during the transaction. When the backup detective later showed him the photograph, Stapleton testified, he immediately recognized the individual depicted as the man who had sold the cocaine "based on the fact that I had looked him in the face a few inches apart just, you know, a short while before."

In light of that testimony, even assuming that presenting Stapleton with the single photograph of Sorrells was an impermissibly suggestive identification procedure,[10] the trial court was authorized to conclude that, under the totality of the circumstances, there was no substantial likelihood of irreparable misidentification.[11]

---

[10] See generally *Johnson*, supra; *Anderson*, supra.

[11] See *Scandrett*, supra at 603-604 (2) (rejecting claim that identification evidence by eyewitness to the murder was inadmissible, where witness's in-court identification of defendant had an independent origin from out-of-court identification; witness testified at hearing conducted before contested evidence was admitted that he was in close contact with the defendant at the time of the murder and had "got a good look" at the defendant and that he would never forget the face of the man who had shot his friend); *Jones*, supra (rejecting claim of substantial likelihood of misidentification, where witnesses had two opportunities to observe defendant on night in question, witnesses had the chance to see the defendant under a bright street light, witnesses all gave consistent descriptions of defendant's appearance, witnesses were all certain of their identifications, and initial identifications of defendant occurred shortly after the crimes); *Hamilton v. State*, 180 Ga. App. 284, 285 (1) (349 SE2d 230) (1986) (finding identification testimony admissible, where witness was "a police officer, trained to observe, remember and identify suspects and persons committing offenses in his presence"; witness observed defendant during, before, and

Therefore, we find no abuse of discretion by the trial court's decision to allow the jury to be presented evidence of Stapleton's identifications.[12]

2. Sorrells contends that the trial court erred by rejecting his claim of ineffective assistance of trial counsel, claiming that his trial lawyer erred in two respects. First, Sorrells complains that the introduction of the booking records placed prejudicial bad character evidence before the jury. Second, Sorrells complains that his trial lawyer did not move to reveal the identity of the confidential informant, asserting that the "informant was the only witness present [at the scene], besides the testifying [detectives], who could have supported his defense of misidentification."

Pursuant to *Strickland v. Washington*:[13]

To prevail on a claim of ineffective assistance, [the defendant] must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. To prove that the performance of his lawyer was deficient, [the defendant] must show that the lawyer performed his duties at trial in an objectively unreasonable

after the thirty-second drug transaction; witness immediately wrote down description of appellant, and witness testified that his identification was based on his observation of defendant on the night of the drug sale, not on the contested identification procedure).

[12] See *Scandrett*, supra; *Jones*, supra; *Hamilton*, supra.

[13] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

11

way, considering all the circumstances, and in the light of prevailing professional norms. And to prove that he was prejudiced by the performance of his lawyer, [the defendant] must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.[14]

On appeal, this [c]ourt accepts the trial court's findings of fact, unless they are clearly erroneous. However, the trial court's legal conclusions are reviewed de novo.[15]

(a) We turn first to Sorrells's complaint that, by introducing the booking reports, his trial lawyer injected prejudicial evidence of bad character.

At the evidentiary hearing on Sorrells's motion for new trial, Sorrells's trial lawyer was the sole witness. The lawyer recounted that Sorrells had told him during trial preparation that he (Sorrells) had used "Boot," but never "Black," as an alias. Hence, the lawyer decided to support the misidentification defense by introducing booking reports to show that Sorrells had used only "Boot" as an alias. Hedging against anticipated closing argument by the state that Sorrells had used "Boot" only

---

[14] *Valentine v. State*, 293 Ga. 533, 537 (3) (748 SE2d 437) (2013) (citations and punctuation omitted).

[15] *Hill v. State*, 290 Ga. 493, 499 (7) (722 SE2d 708) (2012) (citations and punctuation omitted).

sporadically, the trial lawyer obtained and thus introduced in evidence the 20 booking reports at issue, which spanned the period February 1997 through July 30, 2009. And as noted above, the only alias listed on any such document was "Boot."

On appeal, Sorrells maintains that his trial lawyer performed deficiently by introducing 20 such reports without redacting the respective charges. As a result, Sorrells points out in particular, the jury was presented evidence that he had been arrested for both possession and sale of cocaine,[16] which he argues undermined his claim that he had not been involved in the cocaine sale underlying this case. Sorrells also points out that the documents revealed his arrest for giving a false name,[17] which he argues undermined his claim that his only alias had been "Boot." Further, Sorrells claims that while the remaining documents introduced by his trial lawyer did not list charges that directly undercut his defense, they nonetheless also constituted prejudicial and otherwise inadmissible bad character evidence. Those charges included: aggravated stalking, aggravated assault, felony obstruction of an officer, multiple battery charges, false imprisonment, criminal damage to property, criminal

_____

[16] The arrest dates shown for these charges were June 28, 2006 and March 3, 2002, respectively.

[17] The arrest date for this charge was July 10, 2007.

trespass, interference with a 911 call, and multiple parole violations. Moreover, during closing argument, the prosecutor directed the jurors' attention to the underlying charges: "You're going to see all those 20 book-ins of all the arrests the Defendant had in the last 13 years." Under these circumstances, Sorrells posits, "Any doubt the jury had as a result of his alibi witness, the confusion over his alias, or the possibility of misidentification was extinguished by the introduction of his lengthy criminal history."

The trial court rejected Sorrells's claim of deficient performance, citing the trial lawyer's testimony of trial strategy. But evidence of Sorrells's prior arrests would not have been presented to the jury had his trial lawyer not introduced the 20 unredacted booking reports, as the state had not sought to present any similar transaction evidence.[18] And as was concluded under similar circumstances in cases such as

---

[18] See generally *Williams v. State*, 261 Ga. 640, 641 (2) (a) (409 SE2d 649) (1991) ( explaining that "evidence of an independent offense or act committed by the accused is highly and inherently prejudicial, raising . . . an inference that an accused who acted in a certain manner on one occasion is likely to have acted in the same or in a similar manner on another occasion and thereby putting the accused's character in issue"; and holding that before any evidence of independent offenses or acts may be admitted into evidence, a hearing must be held at which the state must make affirmative showings as to each independent offense or act it seeks to introduce).

*Whitaker v. State*[19] and *Emilio v. State*,[20] we conclude here that trial counsel's actions constituted deficient performance and the trial court erred in holding otherwise.[21]

> [I]nvoking the words "tactics" and "strategy" does not automatically immunize trial counsel against a claim that a tactical decision or strategic maneuver was an unreasonable one no competent attorney would have made under the same circumstances. "Tactics" and "strategy" provide no talismanic protection against an ineffective assistance of counsel claim. Even assuming that trial counsel in this case knowingly made the tactical decision [challenged here], it is not a *reasonable* decision a competent attorney would have made under the same circumstances.[22]

---

[19] 276 Ga. App. 226 (662 SE2d 916) (2005).

[20] 263 Ga. App. 604 (588 SE2d 797) (2003).

[21] See *Whitaker*, supra at 227 (1) (finding deficient performance, where defense counsel introduced in evidence unredacted exhibit showing that defendant had previously been charged with an identical crime and two closely related crimes, yet offered at new trial hearing no explanation for failing to redact the exhibits); *Emilio*, supra at 605 (1) (finding deficient performance, where defense counsel introduced an exhibit as part of a trial strategy to impeach a witness, where exhibit also stated that the defendant was wanted in five states and implied that the Georgia Bureau of Investigation was investigating the case).

[22] *Benham v. State*, 277 Ga. 516, 517 (591 SE2d 824) (2004) (citation and punctuation omitted; emphasis in original).

Sorrells thus proved that his lawyer erred in one of the two respects alleged, but prejudice must also be proved.[23] And "it is the prejudice arising from 'counsel's errors' that is constitutionally relevant, not that each individual error by counsel should be considered in a vacuum."[24] "To the extent that the performance of counsel was deficient in more than one respect, it is the collective effect of the deficiencies against which prejudice is measured."[25] Accordingly, in light of our holding in Division 2 (b),[26] upon remand, the trial court shall determine whether (consistent with this division) Sorrells satisfied the prejudice prong of *Strickland*.[27]

(b) We turn to Sorrells's complaint that his trial lawyer did not move to reveal the identity of the confidential informant.

At the motion for new trial hearing, Sorrells's lawyer acknowledged that he had not attempted to discover the informant's identity. The lawyer testified that he had anticipated that the state would call both detectives to identify Sorrells as the man

[23] See *Kendrick*, supra.

[24] *Schofield v. Holsey*, 281 Ga. 809, 812, n. 1 (642 SE2d 56) (2007).

[25] *State v. Worsley*, 293 Ga. 315, 324 (3) (745 SE2d 617) (2013), citing *Schofield*, supra.

[26] Infra.

[27] See *Worsley*, supra; *Kendrick*, supra; *Schofield*, supra.

16

who had sold the cocaine and thus had determined that a third witness also identifying Sorrells as the seller would have been detrimental. Upon further questioning, however, the lawyer conceded that he had not known what the informant's testimony might have been.

The trial court rejected Sorrells's claim that his trial lawyer had erred by not seeking the confidential informant's identity. The trial court reasoned that any motion to reveal the confidential informant's identity would have been denied, determining that Sorrells would not have been able to make requisite threshold showings. Additionally, the trial court determined that by not pursuing the informant's identity, "[Sorrells's trial lawyer] was strategically implementing a form of 'damage control.'"

Sorrells maintains on appeal that "the [informant's] testimony could have been exculpatory" and thus his trial lawyer's failure to seek the informant's identity amounted to deficient performance. Further, Sorrells charges that the trial court should not have rejected his claim of deficient performance without first conducting an in camera hearing regarding the informant's testimony.[28]

---

[28] On motion for new trial, Sorrells asked the trial court to conduct a post-conviction in-camera hearing to determine whether the failure to identify the confidential information was harmful to his defense.

17

"[T]he due process concept of fundamental fairness require[s] that the public interest in protecting the flow of information to law enforcement officials be balanced against the right of the accused to a full and fair opportunity to defend himself."[29]

> For purposes of determining whether the State must reveal the identity of the confidential informant, the trial court must conduct a two-step hearing[.] Initially, the trial court should hear evidence to determine: (a) that the confidential informant is an alleged informer-witness or informer-participant whose testimony appears to be material to the defense on the issue of guilt or punishment; (b) that the testimony for the prosecution and the defense is or will be in conflict; and (c) that the confidential informant was the only available witness who could amplify or contradict the testimony of these witnesses. If the threshold is met, the trial court must conduct an in-camera hearing of the confidential informant's testimony. The trial court should then weigh the materiality of the informer's identity to the defense against the State's privilege not to disclose his name under *Roviaro*.[30]

---

[29] *Thornton*, supra at 164 (2), citing *Roviaro v. United States*, 353 U. S. 53 (77 SCt 623, 1 LE2d 639) (1956).

[30] *Hernandez v. State*, 291 Ga. App. 562, 569 (3) (662 SE2d 325) (2008), citing *Roviaro*, supra (punctuation and footnotes omitted); see *Thornton*, supra at 163-165 (2).

An appellate court reviewing rulings thereon "may consider all relevant evidence contained in pretrial, trial, and post-trial proceedings."[31] The record here shows that, contrary to the trial court's determination otherwise, the threshold requirements for an in-camera hearing *were* satisfied. Because the confidential informant participated in the drug transaction, his testimony appears material to Sorrells's defense of misidentification; the testimony presented by the prosecution was in conflict with that presented by Sorrells; and the confidential informant was the only available witness to the transaction who could have amplified or contradicted the testimony of the state's witnesses concerning the seller's identity.[32]

Furthermore, although the trial court determined that forgoing the informant's identity was a strategic means of "damage control," Sorrells's trial lawyer conceded

---

[31] *Hernandez*, supra at 568-569 (3), n. 20 (citation and punctuation omitted).

[32] See *Little v. State*, 230 Ga. App. 803, 808-810 (3) (498 SE2d 284) (1998) (concluding that the threshold requirements for an in camera hearing were met, where the police officer's testimony was in conflict with the defense witness's testimony that the defendant was not at the drug scene and thus could not have participated in the drug transaction, and where the confidential informant was the only available witness to the drug transaction who could have amplified or contradicted their testimony; noting further that the defendant elected not to testify); *Hampton v. State*, 215 Ga. App. 57-58 (449 SE2d 654) (1994) (concluding that an in camera proceeding to determine whether the failure to obtain identity of confidential informant was harmful was required, where testimony of undercover police officer working with confidential informant conflicted with the testimony of defendant).

19

that he had not discerned that the informant's testimony would have been damaging. Given the circumstances of this case, failure to seek the informant's identity did not fall within the ambit of reasonable trial strategy, but was error.[33]

In light of the foregoing, we vacate the trial court's denial of Sorrells's motion for a new trial.

> On the record before us, we are unable to determine if [Sorrells's] trial counsel's failure to obtain the identity of the confidential informant prejudiced his case. Accordingly, the trial court is directed to conduct a post-trial, in-camera proceeding . . . to determine whether the failure to obtain the identity of the confidential informant was harmful.[34]

*Judgment affirmed in part and vacated in part, and case remanded with direction. Ellington, P. J., and Branch, J., concur in judgment only.*

---

[33] *Turpin v. Christenson*, 269 Ga. 226, 239 (12) (A) (497 SE2d 216) (1998) ("An attorney is not ineffective because he fails to follow every evidentiary lead, but an attorney's strategic decision is not reasonable when the attorney has failed to investigate his options and make a reasonable choice between them.") (citation and punctuation omitted).

[34] *Hampton*, supra.