**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 14, 2014**

# In the Court of Appeals of Georgia

A14A1358. WILLIAMS v. THE STATE.                     DO-050 C

A14A2061. MERRITT v. THE STATE.                     DO-075 C

DOYLE, Presiding Judge.

Jamarri Williams and Montaviis Merritt were each convicted of two counts of armed robbery,[1] theft by receiving stolen property,[2] three counts of aggravated assault,[3] two counts of battery,[4] and possession of a firearm during the commission of a felony.[5] Williams and Merritt appeal the denial of their subsequent motions for

---

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-8-7 (a).

[3] OCGA § 16-5-21 (b) (2).

[4] OCGA § 16-5-23.1 (a).

[5] OCGA § 16-11-106 (b) (1). Williams and Merritt also were charged with obstruction of a law enforcement officer, but the trial court directed a verdict as to

new trial, arguing that the trial court erred by denying their motions to suppress inherently suggestive on-the-scene showup identifications. Because both cases arise from the same facts and involve a joint trial and motion hearings, we have consolidated them. We affirm for the reasons that follow.

Viewed in favor of the verdict,[6] the record shows that on October 7, 2006, Richard Heidal was walking to a friend's house in an Atlanta neighborhood after consuming five or six beers. While he was en route, two men, one of whom wielded a silver handgun, approached Heidal from behind and demanded his wallet. Heidal complied and dropped to the ground, face down, where one of the men kicked him, and the men then fled. According to Heidal, he observed the men for about 60 seconds before dropping to the ground.

Around the same time, Charles Anthony walked Ashley Adiano to her car from a bar in an adjacent neighborhood.[7] Three men approached the pair, and one of them put a handgun to Anthony's head, ripped his wallet from the chain affixed to his

that count.

[6] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[7] Both Anthony and Adiano consumed "some" drinks that evening.

pants, and struck him in the mouth with the gun. Anthony fled on foot. One of the assailants grabbed Adiano by the hair as she ran towards a nearby pizza restaurant, pushed her to the ground, and began beating her. Several employees from the restaurant, including David Vance, Michael Kent, and Christopher Shubert, saw the assault and raced outside, yelling. The assailants ran, with one of them firing his gun as he did so.

Both victims and all three witnesses recalled that the assailants were young and black. Anthony was unable to see the assailants' faces and recalled only that one of them wore a t-shirt. Adiano described one of them as thin and recalled that one of them wore a striped, collared shirt. Vance, who was approximately 20 feet from the assailants when they ran away, described one as short, one as average, and the other as tall. At one point the assailants were directly in front of Shubert, who recalled that two of them wore dark shirts. Kent, who was approximately 20 feet from the assailants, described one of them as taller than the other two, and he recalled that two of them wore dark shirts, and the third wore a blue and white shirt.

Shortly thereafter, but before dispatch reported the robberies, Officer James Bryant saw a young black male run and dive into the side door of a green minivan on a major street in the area. As Bryant followed the minivan, it sped up, and Bryant

3

contacted his supervisor, who advised him to "back off a little bit" because he had not observed any crime. A minute or so later, dispatch reported the robbery and, according to Bryant, indicated that the vehicle involved was possibly a green minivan.[8] Officer Paul Farruggia then spotted the minivan and pulled behind it. The minivan pulled over, and four males jumped out of it and fled. Farruggia pursued them, and backup officers apprehended Merritt, Williams, and Davii Merritt; the fourth man was never caught.[9]

Police found a silver handgun on the floor behind the driver's seat of the minivan, which van police later learned was stolen. Police also determined that the shell casing recovered at the scene of the second robbery had been fired from the handgun recovered from the minivan. Officers did not recover any of the victims' wallets or money.

Police arrested and handcuffed the three suspects and transported them to the second scene, where they showed the suspects to the victims and three witnesses. The suspects were handcuffed at the time, and police shined a light in their faces for the

---

[8] Bryant conceded at trial that dispatch records from that evening do not indicate that dispatch mentioned a green minivan.

[9] Davii Merritt was not tried with Montaviis Merritt or Williams.

4

identifications. All three victims and the three restaurant employees identified Williams and Montaviis Merritt. Heidal testified at trial that he was "100 percent" certain of his identification. Adiano testified that although she had the impression before the showup that police had apprehended the suspects, she was able to identify them because the showup was approximately ten minutes after the robbery. Anthony, who did not see the suspects' faces during the assault, testified that police told him that they had apprehended the suspects before the showup and that because of the light shined in the suspects faces, he could not see them, and they could not see him. Nevertheless, Anthony identified the suspects based on one of their t-shirts. Shubert testified that he did not assume that they were the assailants because they were in the police car, but instead was able to visually identify them because he had just seen them minutes earlier during the attack. Kent testified that although his identification was not based on the fact that the suspects were in a police car, he conceded that he "thought perhaps it would be the people" before identifying them.

Detective Watkins, who assisted in the showup, testified that he asked the victims and witnesses whether they could identify the assailants after advising them that "we have some suspects that could possibly be involved in the robbery. . . ." According to Watkins, the suspects were shown to the victims separately, and officers

5

shined a flashlight in the suspects' faces; the suspects had already been arrested and were handcuffed at the time of the showup.

Montaviis Merritt and Williams filed motions to suppress the showup identifications, and the trial court denied the motions following a hearing. The trial court entered a directed verdict as to the obstruction charge, and the jury found both defendants guilty of two counts of armed robbery, theft by receiving stolen property, three counts of aggravated assault, two counts of battery, and possession of a firearm during the commission of a felony. This appeal follows the trial court's denial of their subsequent motions for new trial.

Williams and Merritt contend that the trial court erred by denying their motions to suppress the showup identifications of the victims and witnesses, arguing that the showups were inherently suggestive.

> A two-part test is used to determine the admissibility of pre-trial identifications. First it must be determined whether the procedure used was, in fact, impermissibly suggestive. If it was, the court must consider the totality of the circumstances to determine whether a very substantial likelihood existed of irreparable misidentification.[10]

---

[10] *Salazar v. State*, 245 Ga. App. 878, 878-879 (1) (539 SE2d 231) (2000).

6

"If[, however,] the answer to the first question is negative, we need not consider the second question; conversely, we may immediately proceed to the second question and, if the answer thereto is negative, we may entirely pretermit the first question."[11]

> A one-on-one showup is inherently suggestive. But both state and federal courts have recognized countervailing considerations that can render one-on-one confrontations permissible, and even helpful. For instance, speedy investigation and prompt identification enhance accuracy and reliability, which expedite the release of innocent subjects.[12]

With regard to the totality of the circumstances analysis, the United States Supreme Court has set forth specific factors to consider in determining whether there was a substantial likelihood of misidentification:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.[13]

---

[11] (Footnote and punctuation omitted.) *Singleton v. State*, 324 Ga. App. 141, 142 (1) (749 SE2d 753) (2013).

[12] *Salazar*, 245 Ga. at 879 (1).

[13] *Neil v. Biggers*, 409 U. S. 188, 199-200 (III) (93 SC 375, 34 LE2d 401) (1972).

7

On review of a trial court's ruling on a motion to exclude an identification, "evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous."[14]

Here, pretermitting whether the showup was inherently suggestive,[15] the trial court did not err by concluding that there was no substantial likelihood of irreparable misidentification. None of the assailants covered their faces during the assaults, and the showup took place immediately after the suspects were apprehended, which occurred shortly after the assaults. Heidal, who looked at his assailants for a full minute during the assault, was 100 percent certain of his identification. The three restaurant employees were close to the assailants when they observed them, and

---

[14] *Scandrett v. State*, 293 Ga. 602, 603 (2) (748 SE2d 861) (2013).

[15] See *Thomason v. State*, 268 Ga. 298, 305 (3) (486 SE2d 861) (1997) (interpreting police officers' statement "we've got him" to witnesses to "merely confirm[] that a suspect was being held who matched the lookout description, and that [the witnesses] should proceed to either confirm or deny that the proper individual had been apprehended"); *Butler v. State*, 276 Ga. App. 161, 164 (1) (623 SE2d 132) (2005) ("The fact that [the defendant] was in a police car when he was identified does not alone render the identification inadmissible."); *Jackson v. State*, 260 Ga. App. 848, 850 (3) (581 SE2d 382) (2003) ("[T]he fact that [the defendant] was surrounded by uniformed officers and was handcuffed when the victim identified him does not render the identification per se inadmissible.").

8

several of the victims/witnesses were able to describe the assailants' builds and clothing. Although Anthony did not see his assailants' faces during the attack, he was able to identify them by their clothing. And although the three victims had all consumed alcoholic beverages before they were attacked, there was no evidence that it impaired their ability to identify their assailants or that the restaurant employees' ability to observe and identify the assailants was impaired.

> Under the totality of circumstances presented here, the trial court was authorized to find that the showup procedure employed by police . . . did not give rise to a substantial likelihood of irreparable misidentification. The trial court, therefore, did not err in concluding that the . . . identifications were sufficiently reliable to be admitted at trial.[16]

Further, police apprehended the suspects very close to the scene of the robberies shortly thereafter in a stolen vehicle, which contained the gun used in the second robbery. Therefore, even if the trial court erred by admitting the identification

---

[16] (Footnote omitted.) *Singleton*, 324 Ga. App. at 144 (1). See also *Sorrells v. State*, 326 Ga. App. 888, 892-893 (1) (755 SE2d 586) (2014) (physical precedent only); *Fitzgerald v. State*, 279 Ga. App. 67, 68-69 (1) (630 SE2d 598) (2006).

evidence, "in view of the overwhelming evidence of [the defendants'] guilt, such error . . . would be harmless."[17]

*Judgment affirmed. Miller and Dillard, JJ., concur.*

---

[17] See *Davis v. State*, 216 Ga. App. 580, 582 (3) (455 SE2d 115) (1995). See also *McGee v. State*, 209 Ga. App. 261, 262 (1) (433 SE2d 374) (1993), disapproved on other grounds, *Jones v. State*, 272 Ga. 900, 903 (2), n. 13 (537 SE2d 80) (2000).