## S98A0431. WHITAKER v. THE STATE.
## S98A0434. SPEAR et al. v. THE STATE.
### (499 SE2d 888)

THOMPSON, Justice.

Devagas Whitaker, Aaron Kenneth Spear, and Gary Bernard Spear, Jr., were jointly indicted, tried, and convicted of malice murder, felony murder predicated on aggravated assault, and aggravated assault in the shooting death of Randolph Barber. Whitaker appeals in Case No. S98A0431; Aaron and Gary Spear jointly appeal in Case No. S98A0434. We affirm in this consolidated opinion.[1]

The victim and his friends, Temica Stewart, Quandra Wortham, and Willie Harper, were approached by defendant Gary Spear as they were walking to a nightclub in the early hours of the morning. Wortham, who was familiar with Gary Spear, thought he was joking when he put a gun to her chest. When she pushed the gun aside, Gary Spear then approached the victim, who cautioned him to "stop playing with the guns." Defendant Aaron Spear appeared next, also armed with a gun. He was followed by defendant Whitaker, who was carrying a pump shotgun. The defendants shoved the victim. He backed away with his arms raised, and despite his offer to "take what you want," Whitaker shot him in the chest. As the perpetrators fled, Stewart heard one of them ask, "Did you kill the motherfucker?" She then heard the following responses: "Yeah, I killed the motherfucker," and "you should have killed those bitches too." The victim died as a result of multiple buck shot wounds to the chest.

1. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) to enable a rational trier of fact to find each defendant guilty of the offenses for which they were convicted.

2. The defendants contend that the photographic displays shown to witnesses Stewart and Wortham were unduly suggestive and tainted their subsequent in-court identifications.

[C]onvictions based on eyewitness identification at trial fol-

---

[1] The murder occurred on June 25, 1994. The three defendants were jointly indicted in Fulton County on August 30, 1994. Trial commenced on February 5, 1996, and on February 13, 1996, each defendant was found guilty of malice murder, felony murder predicated on aggravated assault, and aggravated assault. The court directed a verdict of acquittal for all defendants with respect to a second charge of aggravated assault. Sentences of life imprisonment were entered for each defendant on February 23, 1996. Whitaker's motion for new trial was filed on February 22, 1996, and amended on March 12, 1996 and February 26, 1997. Gary Spear's motion for new trial was filed on February 20, 1996. Aaron Spear's motion for new trial was filed on March 8, 1996. The motions for new trial were denied in a consolidated order on August 25, 1997. The three defendants filed notices of appeal on September 22, 1997. Their cases were docketed in this Court on December 4, 1997. Oral argument was heard on March 16, 1998.

lowing a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Simmons v. United States,* 390 U. S. 377, 384 (88 SC 967, 19 LE2d 1247) (1968). See also *McCoy v. State,* 237 Ga. 62 (226 SE2d 594) (1976).

It was established at a pretrial hearing that within fourteen hours of the shooting, Stewart and Wortham were separately shown three photographic arrays, each consisting of the photographs of six numbered individuals. The witnesses were instructed to advise the investigating officers if they observed any of the suspects who had participated in the homicide from among those photographs. Stewart testified that she easily identified each of the three defendants from among the photographic arrays based on her observations at the time of the shooting; and that she was not influenced by the officers in making her selections. She independently identified each of the three defendants at the hearing as having participated in the homicide, based on "what happened that night."

Wortham testified that she had no difficulty identifying defendant Gary Spear from among an array of photographs. While she selected photographs of Whitaker and Aaron Spear as "possible" perpetrators, she testified that initially she was not "positive" of these photographic identifications, but then "it just clicked in my mind that . . . [Whitaker] was one of them." She, too, testified that she had not been influenced by the officers in making her selections. She also independently identified each of the three defendants at the hearing based on her observations at the time of the shooting.

While Whitaker complains about differences in the character of the photographs, variances in texture, shading or tone will not necessarily render the procedure impermissibly suggestive. See *Brewer v. State,* 219 Ga. App. 16 (6) (463 SE2d 906) (1995); *Graham v. State,* 171 Ga. App. 242 (11) (319 SE2d 484) (1984). Moreover, both eyewitnesses testified that they were not influenced by any variances in the photographs.

The pretrial photographic procedures, which resulted in the identification of each of the three defendants, were not impermissibly suggestive. We need not inquire further into whether there was a substantial likelihood of misidentification. *Messer v. State,* 247 Ga. 316 (3) (276 SE2d 15) (1981).

3. The defendants assert that the court erred in ruling that they had not established a prima facie case of discrimination in the jury selection proceedings based either on race under *Batson v. Kentucky,*

476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), or gender under *J. E. B. v. Alabama*, 511 U. S. 127 (114 SC 1419, 128 LE2d 89) (1994).

It was established that the State exercised nine peremptory strikes — three to eliminate white females, three to eliminate white males, and three to eliminate African-American females. The court compared the percentage of African-American and male members of the venire with the percentage of those groups represented on the jury, and it concluded that the State had not exercised a disproportionate percentage of peremptory strikes based either on race or gender. While the court denied the defendants' challenges based upon the absence of a discriminatory pattern, it invited defense counsel to be heard further concerning any strike it believed to have been exercised in a discriminatory fashion. Defense counsel declined.

> The Equal Protection Clause of the U. S. Constitution prohibits discrimination in jury selection on the basis of race or gender, or the assumption that a venireperson will be biased in a particular case for no reason other than the person's race or gender. . . . The opponent of the peremptory strike bears the burden of persuading the trial court that the proponent of the strike acted with discriminatory intent in exercising the peremptory challenge.

*Turner v. State*, 267 Ga. 149, 150 (2) (476 SE2d 252) (1996). The challenging party makes out a prima facie case of purposeful discrimination by showing that " 'the totality of the relevant facts gives rise to an inference of discriminatory purpose.' *Batson v. Kentucky*, [supra at 476 U. S. at 94]." *Whatley v. State*, 266 Ga. 568, 570 (3) (468 SE2d 751) (1996). Only if a prima facie case is established, does the burden shift to the proponent of the strike to articulate a race-neutral explanation for the strike. Id.

Although "circumstantial evidence of invidious intent may include proof of disproportionate impact," *Batson,* supra, 476 U. S. at 93, we agree with the trial court that the numbers alone did not establish a disproportionate exercise of strikes sufficient to raise a prima facie inference that the strikes were exercised with discriminatory intent under *Batson/J. E. B.* Since the defendants were unable to articulate additional facts which may give rise to an inference of discriminatory purpose, they failed to carry their burden of establishing a prima facie case under *Batson/J. E. B.* Accordingly, their motions were properly denied. Compare *Slade v. State*, 267 Ga. 868 (4) (485 SE2d 726) (1997) (prima facie case of purposeful discrimination established where State used 100 percent of its peremptory strikes against African-American venirepersons).

## Case No. S98A0431

4. Whitaker contends he received ineffective assistance of trial counsel in that counsel failed to move to suppress his custodial statement; failed to object to allegedly inadmissible hearsay testimony; failed to adequately investigate and present certain witnesses at trial; and failed to object to purported violations of the rule of sequestration.

To prevail on his claim of ineffective assistance of counsel, Whitaker has the burden of showing that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Whatley v. State*, supra at (4); *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985).

(a) Whitaker's counsel testified at the motion for new trial that he made a strategic decision not to object to the admission of Whitaker's custodial statement because the statement was largely consistent with statements made by his co-defendants, and counsel did not view the statement as harmful to the defense.[2] Moreover, since Whitaker elected not to testify, his custodial statement enabled the jury to hear his theory of the defense — that he was not present at the shooting.

(b) One of the investigating officers was asked how Whitaker was identified as a suspect. She responded, without objection, that after Stewart and Wortham had provided descriptions of Whitaker, the officers were able to track him down through the use of his nickname, "D." Even assuming arguendo that this evidence was inadmissible under OCGA § 24-3-2, Whitaker has not shown how he was prejudiced by the lack of an objection. See generally *Kendrick v. State*, 224 Ga. App. 72 (4) (479 SE2d 464) (1996).

(c) Counsel explained his decision not to call certain witnesses as a matter of trial strategy. After reviewing information from the investigator's interviews, counsel recalled that although certain witnesses may have been able to testify that they had seen Whitaker at the nearby Chevron station just before and after the shooting, these witnesses would not have been able to account for Whitaker's whereabouts at the actual time of the shooting.

(d) The first alleged violation of the rule of sequestration occurred during a pretrial hearing, prior to the striking of a jury.

---

[2] Whitaker told police he was with Aaron Spear at an apartment complex (located in close walking distance from the site of the shooting) and when they heard the gunshot they walked to the crime scene; Aaron Spear gave the same explanation. However, Gary Spear told police he was with Aaron Spear and Whitaker at a Chevron service station which was also in close proximity to the area.

After Temica Stewart had concluded her hearing testimony, she was observed speaking with Quandra Wortham outside the courtroom. Aaron Spear's attorney brought the matter to the court's attention and received permission to examine Wortham and others allegedly involved. After hearing from each person who may have had knowledge of any discussions between Stewart and Wortham, the court concluded that there was insufficient evidence to determine whether any substantive discussions took place between the witnesses. Accordingly, the court found the evidence insufficient to draw the conclusion that there had been a sanctionable violation of the rule. However, the court strongly admonished witnesses Stewart and Wortham to refrain from engaging in any conversation during the pendency of the trial.

At the conclusion of Stewart's trial testimony, defense counsel advised the court of another alleged violation of the rule. However, after hearing from all those who may have had knowledge of the incident, the court determined that there had been no substantive discussion between the witnesses and, therefore, no violation of the rule. Since the evidence supports this finding, counsel was not deficient in deciding not to pursue the matter further.

Whitaker has not satisfied either prong of *Strickland* — that his counsel's performance was deficient, or that this deficiency prejudiced his defense.

## Case No. S98A0434

5. Aaron Kenneth Spear and Gary Bernard Spear, Jr., who were represented by separate trial counsel, jointly claim on appeal that they were denied effective assistance of counsel. They assert that counsel failed to present certain defenses; failed to file a motion to sever; failed to present other witnesses to testify as to their location before and after the shooting; failed to object to certain hearsay testimony; and failed to consult sufficiently with their clients prior to making strategic and tactical decisions.

(a) Gary Spear's trial attorney testified that he discussed "at great length" with his client whether to testify, and although he had prepared him to testify, Gary ultimately made the decision not to do so. Counsel's decision not to call any defense witnesses was part of his defense strategy. He explained that one witness could only place the defendants a mile from the scene five to ten minutes after the shooting, and could not account for their whereabouts at the time of the shooting. Moreover, this witness could have been impeached by the State with evidence of three prior convictions. After discussing the question with his client and other defense counsel, the decision was made not to call that witness. Another potential witness was

rejected because she recanted her testimony. Aaron Spear's trial attorney offered similar explanations for the failure to call any defense witnesses, and added that there were no witnesses to attest to his client's good character. He also testified that his client made the decision not to testify.

(b) Both attorneys testified that there were no *Bruton* problems because all defendants' statements were exculpatory, and contained only minor conflicts. Similarly, counsel saw no basis for a severance motion because the co-defendant's statements were, for the most part, consistent, and they "put up a united front," offering a mutual defense of misidentification. In addition, although Gary Spear's attorney talked to him about a *Jackson v. Denno* hearing, he did not seek to suppress the custodial statements because his client chose not to testify and counsel "was not going to leave out the only words that came out of his mouth . . . especially since the words were that he didn't do it."

Finally, counsel for Aaron Spear explained that he did not discuss the need for a *Jackson v. Denno* hearing with his client because the statements were exculpatory and counsel did not believe there were grounds for such a hearing. Counsel did move to exclude the eyewitness identifications and vigorously pursued that issue.

(c) It is asserted that trial counsel was ineffective in failing to seek to exclude certain hearsay testimony elicited during the State's direct examination of one of the investigating officers. First, defendants fail to specify which statements were objectionable. Based on their citations to the transcript, the allegedly inadmissible hearsay presumably concerns the photographic identifications by witnesses Stewart and Wortham. Since these witnesses testified at trial and were vigorously cross-examined by defense counsel, defendants cannot show that they were prejudiced by the lack of objection.

Defendants have failed to establish either prong under *Strickland*. Counsel adequately explained that their decisions were within the realm of trial strategy, and no prejudice has been shown.

6. As discussed in Division 4 (d), supra, the defense advised the court of two alleged violations of the rule of sequestration and the trial court allowed the defense to proffer such evidence. After extensive questioning of the pertinent witnesses, the court determined that the proffered evidence was insufficient to establish that any communications between the witnesses were in violation of the rule. Notwithstanding, defense counsel later requested a jury instruction to the effect that a violation of the rule of sequestration by a witness should be considered in determining the weight and credit to be given the testimony of that witness. See *Childress v. State*, 266 Ga. 425 (2) (467 SE2d 865) (1996); *Jordan v. State*, 247 Ga. 328 (10) (276 SE2d 224) (1981). The request was denied. Since no violation of the

rule had been established, the requested jury instruction was not adjusted to the evidence and was properly denied. Compare *Childress*, supra; *Jordan*, supra.

*Judgments affirmed. All the Justices concur.*

DECIDED MAY 18, 1998.

*Elizabeth G. Rankin*, for appellant (case no. S98A0431).

*Tony L. Axam*, for appellant (case no. S98A0434).

*Paul L. Howard, Jr.*, District Attorney, *Bettieanne C. Hart, Cari K. Johanson*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Allison B. Goldberg*, Assistant Attorney General, for appellee.