S16A0850. BOWEN v. THE STATE.
(792 SE2d 691)

THOMPSON, Chief Justice.

Appellant Rodqucas Bowen was found guilty by a jury of felony murder and other crimes in connection with the shooting death of victim Henry Wright, Jr.[1] The trial court denied appellant's motion for new trial, and he appeals, challenging the sufficiency of the evidence and alleging trial court error in limiting the scope of voir dire and in admitting pre-trial photographic identification evidence. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdicts, the evidence at trial established as follows. On April 9, 2009, appellant went to buy drugs at a drug or "trap" house operated by Paul Parker and cousins Antonio and Dontravious Fagin out of an apartment in Fulton County. That afternoon, Antonio Fagin and Wright, who worked as the trap house door man, were the only people present in the apartment and were unarmed.[2] Appellant knocked on the trap house door, and Antonio, who did not know appellant's name, but

---

[1] The crimes occurred on April 9, 2009. A Fulton County grand jury indicted appellant, along with co-indictees Moxtious Cain and Xzarious Terrell, on charges of felony murder (two counts), aggravated assault with a deadly weapon (two counts), criminal attempt to commit armed robbery, possession of a firearm during commission of a felony, and possession of a firearm by a convicted felon. Appellant was tried separately before a jury in October 2010. The trial court granted appellant's motion for a directed verdict of acquittal on criminal attempt to commit armed robbery and felony murder premised on the felony of possession of a firearm by a convicted felon, and the jury found appellant guilty on the remaining counts. On October 8, 2010, appellant was sentenced to life in prison for felony murder predicated on the underlying felony of aggravated assault with a deadly weapon. One count of aggravated assault with a deadly weapon was merged with the felony murder count for sentencing purposes, see *Noel v. State*, 297 Ga. 698 (2) (777 SE2d 449) (2015), and appellant was sentenced to 20 years consecutive on the remaining aggravated assault count. Appellant also received five-year consecutive sentences on each of the firearm counts. Appellant's motion for new trial was filed on October 14, 2010, and amended on October 7, 2013 by new counsel. Following a hearing held April 22, 2014, the trial court denied appellant's motion for new trial in an order entered March 11, 2015. Appellant filed a timely notice of appeal, and his appeal was docketed in this Court for the April 2016 term and submitted for a decision on the briefs.

[2] The guns normally kept in the trap house had been removed earlier that day and stored in a nearby parked car after police were seen patrolling in the area.

recognized his face, told Wright to let him inside.[3] After selling appellant marijuana in the living room, Antonio returned to the adjacent kitchen area where he was cooking chicken. About a minute later, he heard gunshots and, looking over the countertop into the living room, saw a man with dreadlocks and a baseball cap standing by the front door pointing a gun at him. Appellant, who was still in the apartment, entered the kitchen, and Antonio, noticing a gun-like bulge under appellant's shirt, ran out the back door leaving appellant inside. A woman who lived near the apartment testified that she saw two men, one with little or no hair and one with "dreads," walk up to the trap house shortly before the shooting occurred. She stated that, after hearing the shots, she saw both men leave the apartment through the front door followed by an injured Wright, who staggered toward the street corner before collapsing on the curb.

Antonio testified that while running from the back of the building, he used his cell phone to call Dontravious and, having seen Wright collapse on the sidewalk, informed Dontravious and Parker that Wright had been shot. As the three men met up near the exit gate of the apartment complex, they spotted appellant walking nearby and ran after him. Robert Barrett, who was walking in the complex after getting off work, testified that he saw Wright lying on the curb. Approaching Wright, Barrett then saw appellant, whom he had known for 13 years, walking toward him. The two men greeted each other, and, as Barrett went to aid Wright, he saw the other men run toward appellant. Confronted by Antonio and the others, appellant denied having anything to do with Wright's shooting and, displaying a gun, told the unarmed group to back off. When they complied, appellant ran to a nearby gas station where he carjacked a woman, Brittany Turner, and escaped in her car. Wright, who had been shot in the arm and the chest, died shortly thereafter from the gunshot wound to his torso.

Police investigating the scene found a trail of blood running from where Wright had collapsed to the porch of the trap house apartment. The apartment itself, however, had been cleaned before the police arrived, and no shell casings or fingerprints were found inside. During the course of the investigation, police received information naming appellant, along with two other individuals, Moxtious Cain and Xzarious Terrell, as being involved in Wright's death. Thereafter, Antonio picked appellant out of a photo lineup as the man he sold marijuana to in the apartment just prior to the shooting, and Dontravious picked

---

[3] Several witnesses, including Antonio, described appellant as being bald or with little to no hair.

appellant out of a separate photo lineup as the man he and the others confronted outside the apartment following the shooting. Brittany Turner also picked appellant out of a photographic lineup and identified him as the man who carjacked her at the gas station.

1. Appellant asserts that the evidence presented at trial was insufficient to support his convictions. In addressing challenges to the sufficiency of the evidence, we view the evidence presented in the light most favorable to the verdict and determine only whether a rational trier of fact could have found beyond a reasonable doubt from that evidence that the defendant was guilty of the crimes of which he was convicted. See *Ellis v. State*, 292 Ga. 276, 278 (736 SE2d 412) (2013). Resolving evidentiary conflicts and inconsistencies is the role of the factfinder and, on appeal, this Court neither re-weighs the evidence nor assesses the credibility of witnesses. See *Browner v. State*, 296 Ga. 138, 140 (1) (765 SE2d 348) (2014); *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014).

Pursuant to OCGA § 16-2-20 (a), "[e]very person concerned in the commission of a crime is a party thereto and may be . . . convicted of commission of the crime." While proof of a shared criminal intent with the actual perpetrator is necessary to establish that one is a party to the crime, "shared criminal intent may be inferred from the person's conduct before, during, and after the crime." *Grant v. State*, 298 Ga. 835, 837 (785 SE2d 285) (2016). Here, appellant's conduct before, during, and after the crime suggests that his presence in the apartment at the time of the shooting along with the man with dreadlocks was not coincidental and supports the State's theory that the two men knew each other and were acting in concert. Among other things, the evidence shows that appellant and the man with dreadlocks arrived together at the apartment, were both armed, were the only people in the living room of the apartment at the time Wright was shot, and left the apartment together through the front door following the shooting. Further, when confronted by others following the shooting about his involvement in the crime, appellant threatened them with a handgun and ran to a nearby gas station where he carjacked a woman and stole her vehicle in order to flee the scene. We conclude that the evidence in this case was sufficient for the jury to have found appellant guilty beyond a reasonable doubt — either directly or as a party to a crime — of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); *Powell v. State*, 291 Ga. 743, 744 (1) (733 SE2d 294) (2012) ("A person who does not directly commit a crime may be convicted upon proof that a crime was committed and that person was a party to it.") (Citations and punctuation omitted.).

2. Appellant further contends that the trial court abused its discretion in denying his motion for new trial on general grounds, the consideration of which involves different issues than mere sufficiency of the evidence. See *Allen v. State*, 296 Ga. 738, 740 (770 SE2d 625) (2015) (noting that "[e]ven when the evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is 'contrary to . . . the principles of justice and equity,' OCGA § 5-5-20, or if the verdict is 'decidedly and strongly against the weight of the evidence.' OCGA § 5-5-21"). Despite asserting in his amended motion for new trial that the verdict was "decidedly against the weight of the evidence" and "represents a failure of justice in general and is contrary to the principles of justice, fairness and equity," the record shows appellant made no argument in support of these claims to the trial court. Instead, at the motion for new trial hearing, appellant's counsel addressed these claims by stating that they "in essence . . . all argue that the evidence presented at trial was not sufficient to warrant a conviction." Having thus failed to argue the general grounds to the trial court, appellant cannot now complain that the court abused and/or failed to exercise its discretion under OCGA §§ 5-5-20 and 5-5-21. See *Gray v. State*, 298 Ga. 885, 886 (785 SE2d 517) (2016); *Slaton v. State*, 296 Ga. 122, 125 (765 SE2d 332) (2014). And, although appellant now asks this Court to grant him a new trial on the basis that the jury's verdict is against the weight of the evidence, this Court lacks the authority to do so. See *Slaton*, 296 Ga. at 125 (observing that the decision to grant a new trial based on OCGA § 5-5-21 is solely within the discretion of the trial court).

3. Appellant's claim that the trial court erred by denying his request to question the venire about potential bias against him because he is a convicted felon has not been preserved for appeal. See *Hurt v. State*, 298 Ga. 51, 59 (4) (779 SE2d 313) (2015); *Brockman v. State*, 292 Ga. 707, 720 (8) (739 SE2d 332) (2013).

4. Finally, appellant contends that the trial court erred in admitting evidence at trial of the photographic pre-trial identifications of appellant by Brittany Turner and the Fagin cousins. Without providing any specifics, appellant generally asserts that the pre-trial identification procedures used by the officers who conducted the photographic identifications were unduly suggestive and unreliable and that the trial court erred in denying his motion to suppress this evidence, as well as his in-court continuing objections with respect to its admission.[4]

---

[4] Although appellant did not file a motion to suppress Brittany Turner's pre-trial identification of him, at the beginning of his trial appellant sought via motion in limine to exclude all

Testimony regarding a witness's pre-trial identification of the defendant must be excluded if the identification procedure was unduly suggestive and, under the totality of the circumstances, resulted in a substantial likelihood of misidentification. See *Neil v. Biggers*, 409 U. S. 188, 197 (93 SCt 375, 34 LE2d 401) (1972); *Miller v. State*, 270 Ga. 741 (2) (512 SE2d 272) (1999). This Court employs a two-step process in examining a trial court's admission of identification evidence for error. See *Miller*, 270 Ga. at 743. First, the Court decides whether the identification procedure used was impermissibly suggestive, i.e., "lead[ing] the witness to an 'all but inevitable identification' of the defendant as the perpetrator." Id., quoting *Brewer v. State*, 219 Ga. App. 16 (6) (463 SE2d 906) (1995). Second, and only upon a finding that the identification procedure was indeed impermissibly suggestive, the Court determines whether there was a substantial likelihood of irreparable misidentification of the defendant in light of the totality of the circumstances. See *Miller*, 270 Ga. at 743.

Based on our review of the record,[5] we find that the photographic lineups as presented to the witnesses were not impermissibly suggestive. Trial testimony revealed that the photographic lineup presented to Ms. Turner consisted of a sheet with six pictures of black males with similar hairstyles. The investigating officer read her a standard admonition and did not threaten her or suggest a certain photograph should be selected. Similarly, the Fagin cousins were separately shown different photographic lineups containing the pictures of six black males with similar hairstyles, were read the standard admonition, and were not threatened or told which picture to choose.[6]

---

evidence regarding the carjacking, including Ms. Turner's pre-trial and in-court identification of appellant, on the basis that this evidence involved a separate crime for which appellant had not been charged and, thus, constituted improper character evidence. The trial court disagreed, finding that the carjacking involved appellant's flight from the scene of the shooting and thus was a continuation of the crime at issue and part and parcel of the same event.

[5] Other than what the trial court included in its order entered February 9, 2010 denying appellant's motion to suppress the pre-trial identifications of him made by the Fagins, we do not know what evidence or arguments were considered by that court as appellant failed to include a copy of the transcript of the pre-trial hearing in the record and failed to move to supplement the record after the State pointed out the absence of that transcript in its brief to this Court. See *Johnson v. State*, 296 Ga. 504, 507 (769 SE2d 87) (2015) (noting that "[i]t is the burden of the appellant to ensure that the record is complete").

[6] Having determined that the identification procedures used were not impermissibly suggestive, this Court is not required to examine the totality of the circumstances to determine whether these procedures created a substantial likelihood of misidentification. See *Miller*, 270 Ga. at 743. We note, however, that in its order denying the motion to suppress, the trial court observed that both Antonio and Dontravious Fagin testified at the suppression hearing, with Antonio claiming to have seen appellant four or five times and spoken with him at least twice

Finding no evidence of action by law enforcement that would have led any of these witnesses to single out appellant in the photographic lineups, we conclude that the pre-trial identifications of appellant by these witnesses were admissible.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 31, 2016.

*Kenneth W. Sheppard,* for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Arthur C. Walton, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Aimee F. Sobhani, Assistant Attorney General,* for appellee.

---

prior to selling him drugs on the day of the shooting, while Dontravious claimed to have viewed appellant for sixty to ninety seconds in daylight conditions with no obstructions after Antonio pointed appellant out immediately following the shooting.