In the Supreme Court of Georgia

Decided: February 4, 2019

S18A1302. CURRY v. THE STATE.

ELLINGTON, Justice.

A Spalding County jury found Jarmond Amere Curry guilty of felony murder, voluntary manslaughter, armed robbery, and possession of a firearm during the commission of a crime in connection with the shooting death of Byleem Moore and the armed robbery of Terry Dorsey.[1] On appeal, Curry

[1] The crimes occurred on May 4, 2010. On February 8, 2011, Curry and Chesry Ramond Mathis were indicted for malice murder, felony murder predicated on armed robbery (of Dorsey), armed robbery (of Dorsey), and possession of a firearm during the commission of a crime (the murder of Moore and the armed robbery of Dorsey). Mathis entered a guilty plea to voluntary manslaughter and armed robbery. Following a September 19-22, 2011 jury trial, Curry was found guilty of voluntary manslaughter as a lesser included offense of malice murder and guilty on the other three counts. The trial court determined that the voluntary manslaughter verdict (Count 1) merged with the felony murder verdict (Count 2). On September 22, 2011, the trial court sentenced Curry to life imprisonment for felony murder, life imprisonment for armed robbery, to be served consecutively, and five years for possession of a firearm during the commission of a crime, to be served consecutively. The sentence for armed robbery constitutes a sentencing error, in that the underlying felony of armed robbery (Count 3 of the indictment) should have merged with the felony murder guilty verdict predicated on that offense. See Division 3 of this opinion. Curry filed a motion for new trial on September 23, 2011, which he amended on December 8, 2011, and March 2, 2015. After an April 16, 2015 hearing, the court denied the motion on July 7, 2015. Curry filed a motion for an out-of-time appeal on August 13, 2015; the trial court granted the motion on August 28, 2015; and Curry filed a notice of appeal on September 2, 2015. Curry's appeal was docketed in this Court for the August 2018 term and submitted for decision on the briefs.

contends that the trial court erred in denying his objection to the identification testimony of two witnesses and his motion for a mistrial based on the State's failure to disclose that it showed at least one photograph of Curry to the witnesses and they identified Curry as the man they saw fleeing the scene of the crime. Though we conclude that Curry was erroneously sentenced, we otherwise affirm.

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial showed that on May 4, 2010, Terry Dorsey contacted Byleem Moore seeking to purchase marijuana. Moore in turn contacted Chesry Mathis, who agreed to sell Dorsey a half pound of marijuana. Curry, a longtime acquaintance of Mathis, convinced Mathis to let him rob Dorsey during the transaction. Mathis arranged with Moore for the sale to take place in the apartment of his neighbor, Valerie Parker. After Parker left to pick up her daughter from preschool, Mathis let Curry into her apartment, and Curry hid in a utility closet.

When Dorsey arrived at Parker's apartment, Moore and Mathis were standing at the door and the three men entered the apartment together. As Mathis was weighing the marijuana, Curry emerged from the closet with a bandana over

2

his face, holding a handgun. He pointed the gun at Dorsey and demanded money. As Curry was taking money from Dorsey's pocket, Moore tried to wrestle the gun away from Curry. During the struggle, Curry fired two shots. One bullet struck Moore in the left shoulder and penetrated his lung, heart, and kidney, and another bullet passed through his right thigh. Curry and Mathis immediately ran out the back door.

Two sisters, Ashley Berry and Allison Sides, were in Berry's home around 5:30 p.m. on May 4, 2010, when they heard gunfire. Berry testified that, after she heard a gunshot, she looked out her living room window and saw a man running toward her home from the direction of a wooded area that lies between her back yard and Parker's apartment building. The man jumped over a wall and ran across her back yard. She testified that she had a clear view of the man's face for two or three seconds from a distance of about ten feet. Along with her sister, Berry rushed out her front door, and she saw the man continue running across her yard and then down her street. Berry then saw a second man running from the same direction through her neighbor's yard; he turned down her street in the opposite direction from the first man. At trial, Berry identified Curry as the first man she saw. Sides also saw two men run from the direction of the

apartment building and then split up. She testified that she had a good view of the first man's face for ten to fifteen seconds from a distance of about ten feet. At trial, Sides also identified Curry as the first man she saw running.

When Parker returned to her apartment shortly after 6:00 p.m., she found Moore lying dead in a pool of blood. Mathis was identified as a suspect through his association with Parker and was apprehended the day after the shooting. He confessed to his involvement in the robbery scheme and identified Curry as the shooter.[2] Mathis chose Curry's photograph in an array. He pleaded guilty to reduced charges and testified against Curry at trial. Dorsey also testified, although he was unable to identify the shooter.

1. Curry does not challenge the sufficiency of the evidence. Nevertheless, as is our customary practice in murder cases, we have independently reviewed the record and conclude that the evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Curry was guilty of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307,

---

[2] The pretrial identification procedure at issue in this appeal arose, not in connection with a law enforcement lineup, but in connection with Berry's seeing a photograph in the newspaper and in both sisters' viewing photographs when they met with the prosecutor in anticipation of trial. Additional facts relevant to this issue will be discussed in Division 2, infra.

319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Curry contends that the trial court erred in overruling his objection to the identification testimony of Berry and Sides and in denying his motion for a mistrial after the mid-trial revelation of an impermissibly suggestive pretrial identification procedure. The trial court overruled Curry's objection based on its determination that an impermissibly suggestive identification procedure did not result in a substantial likelihood of misidentification. Because such a determination concerns a mixed question of law and fact, we accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but we independently apply the law to the facts. *Jones v. State*, 291 Ga. 35, 37 (1) (727 SE2d 456) (2012). See *Cikora v. Dugger*, 840 F2d 893, 895 (II) (11th Cir. 1988). "The granting or refusing of a motion for mistrial is necessarily a matter largely within the discretion of the trial judge, and unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial, the exercise of the judge's discretion will not be interfered with." *Stanley v. State*, 250 Ga. 3, 4 (2) (295 SE2d 315) (1982) (citations omitted).

In this case, after Berry identified Curry in court, defense counsel asked during cross examination whether she had seen a line-up or a show-up; she

testified that she saw a "picture in the paper" and recognized Curry as the man she had seen jumping over a wall on the evening of the shooting. Although later testimony would clarify that Berry meant that she happened to see Curry's photograph in the newspaper, the prosecutor asked on redirect whether looking at the picture was "something that [she] asked [Berry] to do, to see if [Berry] could identify the defendant[,]" and Berry responded affirmatively.

Curry objected and moved for a mistrial on the basis that no pretrial identification procedure had been disclosed to the defense before trial, thereby depriving the defense of the opportunity to retain the services of an expert on eyewitness testimony to present in rebuttal. In responding to that argument, the prosecutor stated that she had interviewed Berry and Sides together a few months before trial and that, while she flipped through the State's case file in front of them, they saw photographs of Curry and Mathis that were in the file, pointed at the photographs, and identified the men depicted as the men they had seen running on the evening of the shooting. The prosecutor also stated without contradiction that the photographs had been produced to the defense in discovery. With the revelation that Sides also viewed photographs before trial, Curry's counsel added her pretrial identification to his pending objection and

6

motion for a mistrial.

The trial court determined that showing the witnesses the photographs constituted an impermissibly suggestive identification procedure.[3] The court directed the State to recall Berry and Sides for additional cross-examination and reserved ruling on Curry's motion for a mistrial. Berry testified in greater detail regarding her opportunity to observe the first man who ran through her yard. She testified that she did not describe Curry's facial features in detail when she was first interviewed by law enforcement because she was not asked for such information. Berry elaborated on her previous testimony about seeing "a picture in the paper," stating that, a few weeks after the shooting, she saw a photograph in the newspaper, noticed that the man looked familiar, and realized it was the man she saw jumping over the wall on the evening of the shooting. She also testified that the prosecutor showed her a photographic array a few months before trial, and she selected a photograph of each of the men she had seen on

---

[3] We note that the Georgia General Assembly has prioritized improving the accuracy of eyewitness identifications. To that end, the General Assembly adopted a new chapter in the Criminal Procedure Code, OCGA §§ 17-20-1 through 17-20-3, effective July 1, 2016, which requires any law enforcement agency that conducts live lineups, photo lineups, or showups for the purpose of determining whether a witness identifies someone as the perpetrator of an alleged crime to adopt written policies for using such procedures. An agency's written procedures shall be subject to public disclosure and inspection. Ga. L. 2015, p. 1046, § 4 (Act 173).

the evening of the shooting. She testified that she was absolutely certain that Curry was that man and that her in-court identification of Curry was based on her memory of seeing him on the evening of the shooting.

Sides also gave additional testimony about her opportunity to observe the two men that evening. Like Berry, Sides testified that she did not describe Curry's facial features in detail when she was first interviewed by law enforcement because she was not asked for such information. She testified that Curry was definitely the person she saw running across Berry's yard and that her in-court identification of Curry was based on her memory of seeing him on the evening of the shooting.

When, as in this case, a trial court concludes that the State employed an impermissibly suggestive pretrial identification procedure,

> the issue becomes whether, considering the totality of the circumstances, there was a substantial likelihood of irreparable misidentification. If not, then both the pre-trial and in-court identifications are admissible. . . . The ultimate question is, whether under the totality of the circumstances, the identification is reliable.

*Jones v. State*, 273 Ga. 213, 216 (2) (539 SE2d 143) (2000) (punctuation and footnotes omitted). The factors to be considered in determining whether there was a substantial likelihood of misidentification include:

8

(1) the witness's opportunity to view the accused at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the accused; (4) the witness's level of certainty at the confrontation with the accused; and (5) the length of time between the crime and the confrontation.

*Thomason v. State*, 268 Ga. 298, 303-304 (3) (486 SE2d 861) (1997), citing *Neil v. Biggers*, 409 U. S. 188, 199 (93 SCt 375, 34 LE2d 401) (1972).[4]

In this case, the trial court considered the proper factors in determining whether there was a substantial likelihood of irreparable misidentification. From the witnesses' testimony, the trial court determined that the witnesses had an adequate opportunity in full daylight to view Curry; the witnesses heard a gunshot, ran to see what was happening, and saw two men running from that direction, establishing that the witnesses were fully attentive to observing the two men; and the witnesses' level of certainty in their identifications of Curry at the time of trial was extremely high. In addition, the court found that the absence of facial details from the witnesses' prior description of the men was explained by the fact that law enforcement did not question them about such

---

[4] See *Sexton v. Beaudreaux*, _ U. S. _, _ (138 SCt 2555, 201 LE2d 986) (2018) (applying the factors to be considered in determining whether the Due Process Clause requires the suppression of an eyewitness identification due to the use of an impermissibly suggestive identification procedure, as set out in *Neil v. Biggers* and developed in subsequent cases).

9

details. Based on the totality of the circumstances, the trial court determined that the witnesses' identifications were based on their recollection of the criminal at the scene of the crime, untainted by the subsequent identifications. The trial court overruled Curry's objection to the identifications and denied his motion for a mistrial. We agree with the trial court's determination that, under the totality of the circumstances, there was not a substantial likelihood of irreparable misidentification. Consequently, the trial court did not err in overruling Curry's objection to the identification evidence and did not abuse its discretion in denying his motion for a mistrial based on admission of the evidence.

Furthermore, to the extent Curry's motion for a mistrial was based on the State's failure to disclose any identification procedure to the defense before trial, Curry has not shown a violation of the State's reciprocal discovery obligations. Berry's viewing of a photograph in the newspaper was not an identification procedure employed by law enforcement. *Green v. State*, 279 Ga. 455, 458 (4) (614 SE2d 751) (2005) ("An allegedly suggestive pretrial encounter must be the result of either police or prosecution action to have an effect on the admissibility of a subsequent in-court identification." (citations omitted)). As noted above, the record shows that the State did produce in discovery the actual photographs

viewed by Berry and Sides during their meeting with the prosecutor. And their statements identifying Curry and Mathis in those photographs at that time were oral, not written. See *Mathis v. State*, 291 Ga. 268, 272 (5) (728 SE2d 661) (2012) (statutory obligation to produce witness statements does not apply to oral statements); *Hunt v. State*, 278 Ga. 479, 480 (2) (604 SE2d 144) (2004) (accord).[5] Consequently, the trial court did not abuse its discretion in denying Curry's motion for a mistrial on this basis.

3. As noted in footnote 1, we find an error in the sentence. The trial court imposed a sentence of life imprisonment for the guilty verdict on the armed robbery count of the indictment, Count 3. In fact, that guilty verdict merged into the conviction for the felony murder charge predicated on that felony offense.

_____

[5] In arguing that the State had an obligation to inform him that photographs of him were shown to the witnesses before trial, Curry relies on a pair of related cases, *Joncamlae v. State*, 257 Ga. App. 459 (571 SE2d 461) (2002) (*Joncamlae I*), and *Joncamlae v. State*, 267 Ga. App. 214 (598 SE2d 923) (2004) (*Joncamlae II*). After remanding for a hearing on an ineffective assistance of counsel claim in *Joncamlae I*, 257 Ga. App. at 463 (2), the Court of Appeals held in *Joncamlae II* that the defendant was entitled to a new trial on the basis of ineffective assistance of counsel, where defense counsel failed to object or move for a mistrial after two witnesses' trial testimony revealed their pretrial viewing of photographs of the defendant and the State's failure to provide the photographs to the defendant or inform him that the photographs were shown to the witnesses just before trial, as a result of which the defendant was prevented from challenging the admissibility of the witnesses' in-court identifications. 267 Ga. App. at 217 (1). Those cases are distinguishable from this case, because the witnesses were unsure of their in-court identifications and their testimony showed that their viewing of photographs of the defendant when meeting with the prosecutor the day before trial played a role in their identifications of Joncamlae.

See *Brown v. State*, 302 Ga. 813, 816 (3) (809 SE2d 742) (2018). Accordingly, the additional sentence of life imprisonment to be served consecutively to the life sentence for felony murder is vacated.

Judgment affirmed in part and vacated in part. All the Justices concur.