310 Ga. 738
FINAL COPY

S21A0113.  KIRKLAND v. THE STATE.


MELTON, Chief Justice.

Johnathan Kirkland appeals his convictions for malice murder

and related offenses, contending in a single enumeration that the

trial court erred by failing to suppress an identification of him made

by means of a photo lineup.[1] Specifically, Kirkland contends that the

---

[1] On June 5, 2015, Kirkland and his brother, Brandon, were indicted for 16 counts relating to the shooting death of Amin Bouchelaghem and related offenses committed against Larry Brooks, Michael McGee, Sr., and Michael McGee, Jr. All of the offenses were committed on December 30, 2013. Regarding the shooting death of  Bouchelaghem, the two co-defendants were indicted for participation in criminal street gang activity (Count 1); malice murder (Count 2); felony murder (Counts 3 and 5); aggravated assault (Count 4); and attempted armed robbery (Count 6). In addition, the two co-defendants were indicted for attempted murder, aggravated battery, and aggravated assault of Larry Brooks (Counts 9, 10, and 11); attempted murder and aggravated assault of Michael McGee, Sr. (Counts 12 and 13); attempted murder and aggravated assault of Michael McGee, Jr. (Counts 14 and 15); and possession of a firearm during the commission of a felony (Count 16). Only Kirkland was indicted for a third count of felony murder (Count 7) and possession of a firearm by a convicted felon (Count 8).

At a joint jury trial held from March 22 to April 12, 2016, Kirkland was found guilty of all counts except for three counts of attempted murder (Counts 9, 12, and 14) and two counts of aggravated assault (Counts 13 and 15). The trial court initially imposed a sentence of 15 years in prison for criminal street gang activity (Count 1); life without parole for malice murder (Count 2); 30

photo-lineup procedure was unduly suggestive. For the reasons set forth below, we affirm.

1. The evidence presented at trial shows that, on December 30, 2013, Kirkland, a member of the Bloods gang, while allegedly with his brother, Brandon,[2] attacked and fatally shot Amin Bouchelaghem during an attempted robbery outside of a nightclub.

years for attempted armed robbery (Count 6); five years for possession of a firearm by a convicted felon (Count 8); 20 years for aggravated battery (Count 10); 20 years for aggravated assault (Count 11); and five years for possession of a firearm during the commission of a felony (Count 16), to run consecutively. All three felony murder counts (Counts 3, 5, and 7) and one aggravated assault count (Count 4) were purportedly merged with Count 2, although those counts were actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993).

The trial court granted a motion for an out-of-time appeal on November 1, 2016, and a subsequent timely motion for new trial was filed. Thereafter, Kirkland retained new counsel, who filed an amended motion for new trial on August 2, 2018. After a hearing, the trial court denied the motion for new trial on April 25, 2019. Later, however, the trial court determined that the aggravated assault count (Count 11) should have merged into the aggravated battery count (Count 10) for purposes of sentencing and entered a new final disposition on May 15, 2019, vacating the 20-year sentence for aggravated assault and merging it instead. Kirkland timely filed a notice of appeal on May 24, 2019. The case was docketed in this Court on July 25, 2019, but the appeal was dismissed on November 20, 2019, when no appellant's brief was filed.

Through new counsel, Kirkland filed a second motion for an out-of-time appeal in the trial court on January 23, 2020, which the trial court granted on July 8, 2020. Kirkland timely filed a notice of appeal on August 7, 2020, bringing the current appeal before this Court. The appeal was docketed to the term of this Court beginning in December 2020 and submitted for a decision on the briefs.

[2] Brandon was acquitted of all charges by the jury.

2

Bouchelaghem was preparing to reopen the club after renovations, and he was carrying a large amount of cash. Larry Brooks, Michael McGee, Sr., and Michael McGee, Jr. were at the club helping Bouchelaghem. At one point, when Bouchelaghem tried to leave, his car would not start. McGee, Jr. pulled his vehicle into the back parking lot of the club so they could try to "jump" Bouchelaghem's vehicle. McGee, Jr. noticed two armed men approaching. As they got closer, the two gunmen opened fire. One of the shots struck Brooks in the back, paralyzing him from the waist down. The shots continued, and McGee, Sr. dropped to the ground and pretended to be dead. McGee, Jr. escaped the gunshots by jumping over a nearby wall, injuring his leg in the process. The gunmen then tried to pull Bouchelaghem out of his vehicle, but he resisted. After a short struggle, the gunmen shot Bouchelaghem, killing him.

Multiple witnesses identified Kirkland as one of the gunmen. Shortly before the shootings, Shekierria Adams saw Kirkland at a store across the street from the nightclub. She witnessed Kirkland, who was carrying a gun, cross the street to the alley behind the

nightclub and heard gunshots soon thereafter. Teresa Adeeji told police that she saw Kirkland shooting into Bouchelaghem's car, and she also identified Kirkland in a photo lineup. In separate interviews, McGee, Jr. and Brooks also identified Kirkland in photo lineups.

In addition to these identifications, there was evidence that Kirkland admitted to the shootings. Jarvis McElroy testified that, before the murder, Kirkland stated that he was "going to get" Bouchelaghem. After the shootings, Kirkland stated, "I told you I was going to get him."[3]

2. As to the evidence presented at trial, Kirkland takes issue with only the photo-lineup identification made by McGee, Jr., arguing that the procedure used by police was unduly suggestive and that the trial court should have granted his motion to suppress that identification. With regard to this argument, the evidence

---

[3] Kirkland does not challenge the sufficiency of the evidence, so we do not consider it, as this Court no longer reviews as a matter of course sufficiency of the evidence in the absence of an enumerated error in non-death penalty cases. See *Davenport v. State*, 309 Ga. 385, 399 (4) (b) (846 SE2d 83) (2020).

presented at a pretrial hearing on Kirkland's motion to suppress McGee, Jr.'s identification reveals that, on January 10, 2014, Detective J. Thorpe conducted an interview with McGee, Jr. During this interview, Detective Thorpe presented McGee, Jr. with three photo lineups, each consisting of six photographs of potential suspects. One of the lineups contained a photograph of Kirkland and non-suspect "fillers." On that day, McGee, Jr. was unable to make any identifications. At the end of the interview, McGee, Jr. told Detective Thorpe that he could not concentrate properly on the photographs because of the "heavy medications" he was taking for the injuries to his leg he sustained while fleeing the shooters. McGee, Jr. described his condition as nauseous and "unnervey," and he agreed to come back for a second interview to be conducted at some point after he was no longer taking the medications.

On January 16, 2014, McGee, Jr. returned to the police station, and Detective Thorpe once again presented the same lineups to him, though the order of the potential suspects in each set had been shuffled. At that time, McGee, Jr. indicated that he was no longer

suffering from medication side effects. During this viewing of the photo lineups, McGee, Jr. identified a photograph of Kirkland as one of the shooters with what McGee, Jr. described to be "100 percent certainty."

Kirkland maintains that this procedure was unduly suggestive for three reasons: (a) Detective Thorpe knew Kirkland was the suspect at the time the photo lineups were administered; (b) McGee, Jr. was shown the same lineup containing the same photograph of Kirkland at two different times; and (c) a neighborhood friend had previously shown McGee, Jr. a photograph of Kirkland prior to McGee, Jr.'s first interview with Detective Thorpe. Even if we give Kirkland the benefit of the doubt and assume that he did not affirmatively waive these contentions, the trial court did not abuse its discretion by finding that the photo-lineup procedure was not unduly suggestive.

We have previously explained:

> "If an out-of-court identification by a witness is so impermissibly suggestive that it could result in a substantial likelihood of misidentification, evidence of

that out-of-court identification violates due process and is inadmissible at trial." *Westbrook v. State*, 308 Ga. 92, 99 (4) (839 SE2d 620) (2020) (citation and punctuation omitted). "This Court employs a two-step process in examining a trial court's admission of identification evidence for error." *Bowen v. State*, 299 Ga. 875, 879 (4) (792 SE2d 691) (2016). First, "[w]e review a trial court's determination that a lineup was not impermissibly suggestive for an abuse of discretion." *Westbrook*, supra, 308 Ga. at 99 (4). "[A]n identification procedure is not impermissibly suggestive unless it leads the witness to the virtually inevitable identification of the defendant as the perpetrator, and is the equivalent of the authorities telling the witness, 'This is our suspect.'" Id. (citation and punctuation omitted) Second, if a trial court properly "concludes that the State employed an impermissibly suggestive pre-trial identification procedure, the issue becomes whether, considering the totality of the circumstances, there was a substantial likelihood of irreparable misidentification." *Curry v. State*, 305 Ga. 73, 76 (2) (823 SE2d 758) (2019) (citation and punctuation omitted). If, however, a trial court properly determines that "the identification procedure is not unduly suggestive, it is not necessary to consider whether there was a substantial likelihood of irreparable misidentification." *Westbrook*, supra, 308 Ga. at 99 (4) (citation and punctuation omitted).

*Thomas v. State*, ___ Ga. ___, ___ (4) (___ SE2d ___) (2020). As discussed below, none of Kirkland's contentions would support a finding that any of the actions taken by Detective Thorpe during the identification procedure led McGee, Jr. to the "virtually inevitable"

7

conclusion that Kirkland was the perpetrator, and, as such, the trial court did not abuse its discretion in denying Kirkland's motion to suppress. See id.

(a) First, Kirkland argues that the procedure was unduly suggestive because Detective Thorpe knew Kirkland's identity as the suspect when he conducted the photo lineups. Kirkland essentially contends that a photo lineup *must* be presented by someone who does not know the suspect's identity. But there is no authority supporting Kirkland's argument. To the contrary, statutory law contemplates photo lineups being administered by police officers who know the identity of a suspect, see OCGA § 17-20-2 (b) (2) (B).[4] And, even in those situations, failure to follow the procedures contained within the statute does not require automatic exclusion. See OCGA § 17-20-3 ("The court may consider the failure

---

[4] This statute provides that it is appropriate for a photo lineup to be administered by an individual

[w]ho knows the identity of the suspect [and uses] a procedure in which photographs are placed in folders, randomly shuffled, and then presented to the witness so that the individual conducting such procedure cannot physically see which photograph is being viewed by the witness until the procedure is complete.

8

to comply with the requirements of this chapter with respect to any challenge to an identification; provided however, that such failure shall not mandate the exclusion of identification evidence."). See also *Roseboro v. State*, 308 Ga. 428, 433-434 (2) (a) (841 SE2d 706) (2020) (even assuming that OCGA § 17-20-2 applies to a procedure in which a photo lineup was conducted using pictures on a phone, non-compliance with the statute would not result in the automatic exclusion of an identification); *United States v. Everett*, Case No. 1:17-CR-020-RWS-JKL, 2019 WL 6458425, at *3 (N.D. Ga. July 5, 2019) (failure to follow shuffling procedure in OCGA § 17-20-2 did not render photo-lineup procedure unduly suggestive). So, this ground lacks merit, as Kirkland has identified no action or statement by Detective Thorpe that is the equivalent of him telling McGee, Jr., "This is our suspect." *Westbrook*, supra, 308 Ga. at 99.

(b) Second, Kirkland argues that the procedure was unduly suggestive because Detective Thorpe presented the lineup containing Kirkland's photograph to McGee, Jr. twice, without selecting a completely different photograph of Kirkland for the

second interview and without presenting that photograph in a lineup with all new filler photographs of non-suspects. Again without citation of authority, Kirkland argues that this automatically invalidated the procedure. But he provides nothing to support his speculation that conducting the second lineup in this manner was impermissibly suggestive. As already stated, there was no evidence presented that the procedure employed by Detective Thorpe was equivalent to McGee, Jr. being told by police the identity of the suspect. See *Westbrook*, supra, 308 Ga. at 99. We have previously held that a trial court may be authorized to find that there was no impermissible suggestiveness where the witness identified the defendant in two lineups and the defendant's photograph was the only one to appear in both. See *Clark v. State*, 279 Ga. 243, 245 (611 SE2d 38) (2005). The procedure used in this case is even less suggestive than that used in *Clark*, as the same photographs were repeated. Therefore, Kirkland's second ground for contending that the photo lineup was unduly suggestive and should have been suppressed also fails.

10

(c) Finally, Kirkland maintains that the photo-lineup procedure was unduly suggestive because there was evidence that McGee, Jr. had been shown a photograph of Kirkland by a neighborhood friend prior to his first interview with Detective Thorpe. This argument fails in two ways. First, the outside action taken by Kirkland's neighborhood friend has no bearing on the identification procedure employed *by Detective Thorpe* and provides no evidence that the procedure, itself, was unduly suggestive. See *Curry*, supra, 305 Ga. at 78 (2) (holding that the witness's viewing of the defendant's picture in a newspaper prior to making an identification did not require a mistrial because it was not an "identification procedure employed by law enforcement"). Second, McGee, Jr. testified that he could not recall whose photograph his friend had shown him when he ultimately made an identification of Kirkland in the second photo lineup (and he made no identification at all in the first lineup). McGee, Jr. further indicated that the only other time he remembered seeing the shooter's face was on the night of the shooting. McGee, Jr. also stated that he did not believe that

11

the person his friend had shown him was the same person he identified from the lineup, though there may have been similarities.

For all the reasons set forth above, the trial court did not abuse its discretion by admitting McGee, Jr.'s identification of Kirkland. See *Westbrook*, supra, 308 Ga. at 99.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 1, 2021.
Murder. Fulton Superior Court. Before Judge Ellerbe.
*Michael W. Tarleton*, for appellant.
*Paul L. Howard, Jr., District Attorney, Kevin C. Armstrong, Stephany J. Luttrell, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General*, for appellee.