**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 17, 2022**

# In the Court of Appeals of Georgia

A22A0562. THE STATE v. WOOTEN.

MARKLE, Judge.

In this appeal, the State argues that the trial court erred by excluding a photographic lineup identification of the alleged perpetrator, David Wooten, as impermissibly suggestive and unreliable. For the reasons that follow, we agree, and therefore reverse.

The underlying facts are largely undisputed.[1] On October 28, 2020, H. D. A. was driving home from work when he noticed a car in front of him swerving in the roadway. When the vehicle stopped at a stop sign, the driver, later identified as Wooten, exited the car and approached H. D. A.'s vehicle with a gun in his hand. H. D. A. turned on the overhead light in his car, at which point, Wooten said, "Oh, my bad," and walked back to his car. After Wooten drove off, H. D. A. followed him at a distance, planning to make a recording of the car and notify police. However, Wooten slowed down and, as the two cars passed each other, Wooten fired his gun, striking H. D. A.'s car. H. D. A. called police and described Wooten to the investigator as a Black male, age 30-40, with short hair and glasses.

The investigator did not speak with H. D. A. again for several weeks, and was not able to bring him in for an interview until January 19, 2021. The interview was

---

[1] To the extent there is a dispute, we "construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court." *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015). Additionally, we will not disturb the trial court's factual findings where there is any evidence to support them, and we accept the trial court's credibility determinations unless clearly erroneous. *State v. Rosenbaum*, 305 Ga. 442, 449 (2) (826 SE2d 18) (2019); see also *State v. Jennings*, __ Ga. App. __ (1) (869 SE2d 183, 187 (1)) (2022); *Williams v. State*, 329 Ga. App. 666, 669 (765 SE2d 801) (2014). "These same principles of law apply equally to trial court rulings that are in favor of the defendant." (Citation omitted.) *Rosenbaum*, 305 Ga. at 449 (2).

captured on an audio recording. Because he had difficulty communicating in English with H. D. A. by phone, the investigator asked one of the clerks to help interpret during the in-person interview. During the interview, however, H. D. A. was able to communicate with the investigator in English without any assistance. H. D. A. described the attacker as an older Black man, under six feet tall, with a beard containing a gray patch. When asked, H. D. A. stated that he would be able to recognize the attacker again. The investigator stepped out of the room with the interpreter to create a photo lineup. When he returned with the lineup, the interpreter was not with him. After looking at the photos, H. D. A. selected Wooten's photo, indicating that he was "100 percent" sure of his identification.

Wooten was indicted on several charges, including aggravated assault; possession of a firearm during the commission of a felony; and possession of a firearm by a convicted felon. Wooten moved to exclude any identification obtained from the lineup or in court. At a hearing, the investigating officer testified that the victim's description was consistent with Wooten's appearance, and he denied pointing out Wooten's photo, touching the lineup photos, or giving any other hint to the victim regarding which photo he should select during the interview. The State proffered a copy of the photo array, but it was of a poorer quality than the photos

shown to H. D. A. H. D. A. also testified that he got a good look at Wooten on the day of the attack when Wooten approached the car, and he was able to pick him out of the lineup without assistance from the investigator.

The trial court granted the motion to exclude, finding that the photo lineup was impermissibly suggestive.[2] The trial court noted the lack of any video recording of the interview, making it impossible to determine whether police gave any physical suggestion to the victim. Although the trial court made no adverse credibility findings with respect to the investigator's or victim's testimonies, it nevertheless found there was a substantial likelihood of irreparable misidentification given the length of time between the October 2020 attack and the January 2021 photo lineup; the language barrier for the victim; the interpreter's absence during the identification; and the variations in the victim's descriptions of the attacker.

The State now appeals, arguing that the trial court erred in finding that the lineup was impermissibly suggestive and that there was a substantial likelihood of

---

[2] The trial court excluded the out-of-court identification, but the order is silent as to whether any in-court identification would be admitted. We note that, generally, "[c]hallenges to in-court identifications must be made through cross-examination" rather than a motion to suppress. (Citation omitted.) *Biggins v. State*, 322 Ga. App. 286, 292 (3) (b), n. 3 (744 SE2d 811) (2013).

irreparable misidentification.[3] We agree that the trial court erred by excluding the identification.

When "an out-of-court identification by a witness is so impermissibly suggestive that it could result in a substantial likelihood of misidentification, evidence of that out-of-court identification violates due process and is inadmissible at trial." (Citations and punctuation omitted.) *Kirkland v. State*, 310 Ga. 738, 740-741 (2) (854 SE2d 508) (2021). This Court employs a two-step process in examining a trial court's ruling on the admission of identification evidence:

> First, we review a trial court's determination that a lineup was not impermissibly suggestive for an abuse of discretion. An identification procedure is not impermissibly suggestive unless it leads the witness to the virtually inevitable identification of the defendant as the perpetrator, and is the equivalent of the authorities telling the witness, 'This is our suspect.' Second, if a trial court properly concludes that the State employed an impermissibly suggestive pre-trial identification procedure, the issue becomes whether, considering the totality of the circumstances, there was a substantial likelihood of irreparable misidentification. If,

---

[3] The State is authorized to appeal the trial court's order under OCGA § 5-7-1 (a) (4). See *State v. Rosenbaum*, 305 Ga. 442, 447-448 (1) & n. 11 (826 SE2d 18) (2019) (explaining that OCGA § 5-7-1 (a) (4) applies when the State appeals an order suppressing or excluding evidence on the ground that it was obtained illegally). Here, Wooten argued that the suggestive lineup was unreliable and violated his right to due process.

5

however, a trial court properly determines that the identification procedure is not unduly suggestive, it is not necessary to consider whether there was a substantial likelihood of irreparable misidentification.

(Citations and punctuation omitted.) Id.; see also *Newton v. State*, 308 Ga. 863, 865-866 (2) (843 SE2d 857) (2020); *Blackmon v. State*, 300 Ga. 35, 37-38 (3) (793 SE2d 69) (2016).

The State bears the burden of showing the out-of-court identification was not impermissibly suggestive. *State v. Smith*, 308 Ga. App. 345, 349 (1) (707 SE2d 560) (2011). To meet its burden here, the State proffered the testimony of both the investigator and the victim, each of whom confirmed that there was no hint or suggestion that prompted the victim to identify Wooten. In concluding that the photo array was impermissibly suggestive, the trial court focused on the absence of any video recording of the interview and identification, as well as the fact that the interpreter was not present when the investigator showed H. D. A. the photos.

But neither of these factors are relevant to the determination of whether the identification was impermissibly suggestive. First, although H. D. A. testified at the hearing through an interpreter, he confirmed that he can speak and understand English. See *Blackmon*, 300 Ga. at 37-38 (3) (evidence of difficulty communicating

6

with witness, coupled with length of time between crime and identification was relevant to likelihood of misidentification, but not whether identification was impermissibly suggestive). Additionally, he did not require the assistance of an interpreter at the interview, and a review of the audio recording confirms that H. D. A. was able to clearly communicate with the investigator in English and did not rely on the interpreter. Moreover, the interpreter testified that there was no language barrier and that the victim did not need any assistance to communicate with the investigator. The trial court made no finding that these witnesses lacked credibility, and in any case, their testimony is supported by the audio recording of the interview, in which H. D. A. can be heard clearly answering the investigator's questions, detailing the attack, and describing the suspect. *Whitaker v. State*, 269 Ga. 462, 463 (2) (499 SE2d 888) (1998) (finding identification admissible where witnesses testified that officers did not suggest who they should identify).

Second, it is pure speculation that something improper occurred during the interview simply because there is no video record showing otherwise. *Brooks v. State*, 285 Ga. 246, 249 (3), n. 9 (674 SE2d 871) (2009) (speculation that identification was tainted was unsupported by record); compare *Graham v. State*, 273 Ga. App. 187, 188 (1) (a) (614 SE2d 815) (2005) (finding pre-trial identification impermissibly

suggestive where officers informed witness that they believed witness had made the right choice among photographs in array). This is especially true where the investigator and the victim both confirmed that no suggestion was made, and the trial court did not reject this testimony. Where it is clear from the recording that there was no improper suggestion, we are not bound by the trial court's factual finding to the contrary. See *Oh v. State*, 345 Ga. App. 729, 729-730 (815 SE2d 95) (2018) (in reviewing a ruling on a motion to suppress, "to the extent that the controlling facts are undisputed because they are plainly discernable from the . . . recording as they are in this case, we review those facts de novo."); cf. *Blackmon*, 300 Ga. at 38 (3) (videotape confirmed that detectives did not influence victim's identification). Indeed, there is simply *no* testimony or any other evidence indicating that the investigator engaged in any impermissibly suggestive behavior that lead the victim to identify Wooten. *Kirkland*, 310 Ga. at 740-741 (2); *Brooks*, 285 Ga. at 249 (3), n. 9.

Moreover, the fact that the copy of the photo array admitted at the hearing was of poor quality does not equate to an impermissibly suggestive identification, especially given the testimony and other evidence in the record. The officer testified that the array shown to the victim was of better quality, and the victim confirmed that

8

he was able to identify the suspect in the photos from his memory. But even if there were some differences in the photos, that would not require a finding that the lineup was impermissibly suggestive. See *Green v. State*, 291 Ga. 287, 293 (6) (728 SE2d 668) (2012) ("Georgia courts have repeatedly held that slight differences in the size, shading, or clarity of photographs used in an identification lineup will not render the lineup impermissibly suggestive.") (citation and punctuation omitted); *Whitaker*, 269 Ga. at 463 (2) ("differences in the character of the photographs, variances in texture, shading or tone will not necessarily render the procedure impermissibly suggestive."); *Pinkins v. State*, 300 Ga. App. 17, 21 (684 SE2d 275) (2009) ("slight differences in the size, shading, or clarity of photographs used in an identification lineup will not render the lineup impermissibly suggestive."); *Clark v. State*, 279 Ga. 243, 245 (4) (611 SE2d 38) (2005) (finding existence of some variation among 14 photographs in array did not cause array to be impermissibly suggestive); *Williams v. State*, 275 Ga. 622, 623 (2) (571 SE2d 385) (2002) (finding slight differences between defendant's facial hair, hairstyle, and the darkness of the background in his photograph did not cause photographic array to be impermissibly suggestive).

Because we conclude that the lineup was not impermissibly suggestive, we need not address whether there was a substantial likelihood of misidentification.

9

*Williams v. State*, 272 Ga. 828 (2) (537 SE2d 39) (2000); see also *Kirkland*, 310 Ga. at 741 (2). Accordingly, we reverse the trial court's order excluding the out-of-court identification.

*Judgment reversed. Dillard, P. J., and Mercier, J., concur.*